**Docket No. 04–0313–cv.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 6, 2004.

Decided: Dec. 23, 2004.

**Alan ARNOLD, Individually, and Alan Arnold, doing business as McCauley Trucking Company, Plaintiff–Appellant,**

**v.**

**Harvey C. LUCKS, as Trustee and Fiduciary of the Local 807 Labor–Management Health & Pension Funds, John M. Zak, as Trustee and Fiduciary of the Local 807 Labor–Management Health & Pension Funds, Anthony Storz, as Trustee and Fiduciary of the Local 807 Labor–Management Health & Pension Funds, Daniel Gallo, as Trustee and Fiduciary of the Local 807 Labor–Management Health & Pension Funds, and William Turis, as Trustee and Fiduciary of the Local 807 Labor–Management Health & Pension Funds, Defendants–Appellees.**

that bar and consider the merits." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Richard B. Ziskin, The Ziskin Law Firm, LLP, Commack, NY, for Plaintiff–Appellant.

David W. New, Herbert New & David W. New, P.C., Bloomfield, NJ, (Herbert New, on the brief) for Defendants–Appellees.

Before: MINER, CABRANES, and STRAUB, Circuit Judges.

MINER, Circuit Judge.

The plaintiff-appellant, Alan Arnold ("Arnold"), individually and doing business as McCauley Trucking Company, appeals from a judgment entered in the United States District Court for the Eastern District of New York (Amon, *J.*), dismissing,

for lack of subject matter jurisdiction, Arnold's complaint (i) alleging that defendants-appellants, the trustees and fiduciaries of the Local 807 Labor–Management Pension Fund, unlawfully denied Arnold pension benefits and (ii) seeking various forms of legal and equitable relief therefor. On appeal, Arnold contends, inter alia, that the District Court erred in concluding "that Arnold was not an employee as defined by ERISA";[1] "that he maintained a plan that was not an employee benefit plan under ERISA"; and, therefore, that subject matter jurisdiction was lacking.

For the reasons that follow, we find that the District Court erred in focusing entirely on the wrong question. The question of primary jurisdictional significance is not whether Arnold was an "employer," which implicates his ability to establish an employee benefits plan under ERISA, but whether the pension benefits plan maintained by the trustees of the Local 807 Labor–Management Pension Fund is an ERISA-protected employee benefits plan, pursuant to 29 U.S.C. § 1003(a). We conclude that it is. Accordingly, we vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.[2]

## BACKGROUND

### A. The Fund

The defendants-appellees, Anthony Storz, Daniel Gallo, William Turis, Harvey Lucks, and John Zak (collectively, "Defendants"), are or were trustees and fiduciaries of the Local 807 Labor–Management Pension Fund (collectively, the "Fund"), which, at all relevant times, was a jointly administered multi-employer, labor-management trust fund operated pursuant to the terms of various collective bargaining and trust agreements. In accordance with those trust agreements and certain rules and regulations pertaining thereto, the trustees of the Fund (the "Trustees") have provided health and pension benefits to beneficiaries of the Fund, including union members, retirees, and their dependents, on whose behalf contributions to the Fund were made. Such contributions are and were made pursuant to the terms of each contributing entity's collective bargaining agreement, or agreements, with Truck Drivers Local Union 807 ("Local 807" or the "Union"), which is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

### B. Arnold, McCauley Trucking, and Local 807

McCauley Trucking Company ("McCauley") is or was an unincorporated entity that was established in 1973 and at all relevant times maintained a business address in the County of Suffolk, State of New York. Arnold worked for McCauley and, in fact, was both its sole owner and only "employee."[3] Soon after first doing

1. ERISA, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., comprehensively regulates employee welfare benefit plans that, through the purchase of insurance or otherwise, provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability or death.

2. Because only the jurisdictional issue is properly before this Court, we decline to address any of the arguments of the parties relating to the substantive merits of the case, except as necessary to resolve the question of subject matter jurisdiction.

3. In this opinion, we use the term "employee" to describe Arnold. We recognize that, in the ERISA context, to deem a person an "employee" represents a legal conclusion. We draw no such conclusion here, and use the term for the sake of convenience only and because that is how Arnold has been described in all of the papers submitted to this Court, including those submitted by Arnold himself.

business as McCauley in 1973, Arnold was informed by someone affiliated with Local 807 that, in order to transport freight by truck within New York State, Arnold would have to become a member of the Union. That same year, McCauley executed with Local 807 the first of a series of collective bargaining agreements (collectively, the "CBA"), which took the form of "National Master Freight Agreements" and "Supplemental Agreements for the Metropolitan New York–New Jersey Area." The CBA covered the period from 1973 through March 31, 2003.

In 1973, pursuant to the CBA, Arnold became a member of Local 807, and his company, McCauley, began to make contributions to the Fund in amounts that were based on the number of hours worked by, or wages paid to, employees of McCauley who performed work covered by the CBA. As noted above, Arnold was McCauley's sole "employee." He worked approximately three to four days per week, and, initially, McCauley's contributions to the Fund on Arnold's behalf were based on the actual number of hours that Arnold worked.

In 1981, however, Local 807 demanded arbitration, pursuant to the CBA, seeking additional contributions from McCauley on Arnold's behalf. Following the arbitration, the arbitrator ruled that Arnold, as "owner-operator" of McCauley, was obligated to contribute to the Fund on the basis of 174 hours per month, or 520 hours per quarter, regardless of whether the actual number of hours worked by employees of McCauley dropped below that threshold. The arbitration award was subsequently confirmed in the Supreme Court of the State of New York, Queens County. Accordingly, McCauley reimbursed the Fund for all unpaid contributions on Arnold's behalf, retroactive to 1973, for a total of $7,628.89.

From 1981 until 1998, when Arnold's membership in Local 807 was terminated unilaterally, as discussed below, McCauley continued to make payments to the Fund on Arnold's behalf. Throughout, Arnold maintained that a contribution based on 174 hours per month was more than twice the minimum contribution necessary for participation in the Fund. During this period, McCauley submitted monthly remittances to Local 807 in the amounts ordered in the arbitration award, and Arnold received yearly updates from the Fund, indicating his total pension credit. In total, McCauley contributed $119,122.58 to the Fund on Arnold's behalf.

Sometime in 1995, the Fund apparently conducted a "payroll audit" of McCauley. By letter from counsel for the Trustees, dated March 23, 1998, Arnold was informed of this "recent" audit and that it had "brought to the attention of the Trustees" the fact that Arnold was "the only individual for whom contributions [were being] made" by McCauley to the Fund. In the March 23 letter, the Trustees requested that Arnold provide them with detailed information regarding his title and "percentage interest" in McCauley.

In a pair of letters that Arnold's wife wrote on his behalf to Local 807, dated April 10, 1998, Arnold requested information regarding the total amount of his contributions to the Fund, as well as a copy of the "rules and regulations" of the Fund and "any changes thereto" that may have "occurred since 1973." Arnold demanded that he receive the "full health [and] pension benefits" to which he was entitled as a result of having contributed to the Fund for almost twenty-five years.

Local 807's response came by letter from Alfred Fernandez, a representative of the Trustees, dated April 28, 1998, stating that McCauley's "owners, officers[,] and supervisors [were] not permitted to be members of its bargaining unit" and that, for this reason, Arnold was "not eligible" to participate in either the health plan or

the pension plan (collectively, the "Local 807 Plan") maintained by the Trustees. Notably, Fernandez also stated in the April 28 letter that the Trustees had only "recently" become aware that Arnold was "the sole proprietor and only employee of McCauley." In addition, the letter stated that Arnold's "health and pension coverage [had to] be terminated effective immediately" and that "[n]o further contributions [would] be accepted by [the] Fund on Arnold's behalf." Finally, the letter informed Arnold that he had a right to appeal the decision "pursuant to the provisions of the [Local 807 Plan]." Two days later, by letter dated April 30, 1998, Local 807 informed Arnold that "[d]ue to the fact that [he was] not an 'employee' as defined by the National Labor Relations Act, [his] membership in [Local 807 was] terminated immediately."

The April 28 letter from Alfred Fernandez represented the first communication from the Trustees, written or otherwise, informing Arnold of their position that he was not eligible to participate in the Fund. As of January 31, 1998, Arnold had accrued over twenty-four-and-one-half years of pension credit through his contributions to the Fund.

Arnold sought a review of the Trustees' denial of benefits, but the Trustees maintained that Arnold was not eligible to participate in the Local 807 Plan. Through April 2000 the parties continued to correspond regarding their dispute over Arnold's pension benefits. By letter dated April 14, 2000, as a final effort to resolve the dispute, the Trustees offered to pay McCauley "the amount of $119,122.58 representing a full return of contributions made on Mr. Arnold's behalf," though without any of the accumulated interest. The April 14 letter made clear, however, that it remained the Trustees' position that, according to the rules and agreements governing the Local 807 Plan, Ar-

nold was "not eligible to receive pension benefits" pursuant to that plan.

## C. Procedural History

Arnold commenced the underlying action by filing a complaint (the "Complaint") in the United States District Court for the Eastern District of New York, alleging an unlawful denial of benefits and seeking various forms of relief. In particular, Arnold requested that the District Court issue a judgment declaring him eligible to participate in, and derive benefits from, the Local 807 Plan. In the alternative, Arnold sought restitution of all contributions made to the Fund on his behalf, the exact amount offered as a settlement just a few months before. The parties cross-moved for summary judgment, and the District Court referred the matter to Magistrate Judge Arlene Rosario Lindsay.

In a twenty-five-page report and recommendation dated August 29, 2003, the Magistrate Judge set forth a number of determinations. Central to the issue before this Court, she determined: (1) that Arnold "maintained" a "plan"; (2) that Arnold "was a sole proprietor with no 'employees,' and as such was not an 'employer'"; (3) that "[b]ecause of this, the plan [that] Arnold maintained [did] not meet the definition of an 'employee benefits plan' under ERISA"; and (4) that the "court [was], therefore, without jurisdiction to proceed." Objections to the report and recommendation were submitted to the District Court on September 26, 2003, and oral arguments were heard in the District Court on October 29, 2003.

In a two-page unpublished order dated November 20, 2003, the District Court adopted the report and recommendation of the Magistrate Judge as the opinion of the District Court "to the extent that it conclude[d] that [Arnold] was a sole proprietor, that the plan maintained by [Arnold]

was not an employee benefit plan under ERISA, and, therefore, that the case should be dismissed for lack of subject matter jurisdiction." The court dismissed the Complaint for the stated reason, and this timely appeal followed.

## DISCUSSION

 It is beyond cavil that "federal courts are creatures of limited jurisdiction," *Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir.2002), and that "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934)). This mandate carries no less force in a case wherein the plaintiff invokes jurisdiction under ERISA to recover for the purportedly erroneous denial of benefits under an employee benefits plan.[4] Indeed, it is not only proper but necessary for a district court to satisfy itself that ERISA applies to the at-issue benefits plan in such a case, because it is ERISA that provides the jurisdictional basis to address the plaintiff's claims.

Before the issue of whether ERISA governs a particular benefits plan may be addressed, however, an even more elementary question may require resolution—namely, what is the particular benefits plan at issue in the case? Here, that inquiry is complicated by the fact that there are potentially *two* plans at issue: (1) the plan that inarguably is maintained by the Trustees for the beneficiaries of the Fund, i.e., the Local 807 Plan; and (2) the

plan that the Magistrate Judge, the District Court, and the Defendants have ascribed to Arnold and McCauley but that Arnold denies ever having established or maintained.

It is clear to us that the plan at issue in this case is the Local 807 Plan. The Complaint states a claim against the Local 807 Plan and, as demonstrated by the Magistrate Judge's report and recommendation, any judicial inquiry must be into the provisions of the Local 807 Plan. On the record presented, in fact, there is no basis for us to conclude that Arnold or McCauley did anything other than see to it that the required amounts were contributed on his behalf to the Fund each month during his tenure as a member of Local 807.

The distinction between this case and *Meredith v. Time Ins. Co.*, 980 F.2d 352 (5th Cir.1993), a case relied on by the Magistrate Judge, makes this clear. In that case, the plaintiff was "the owner of a … small flower and fruit basket company in Pasadena, Texas" that she had "organized as a sole proprietorship, employing herself and, ostensibly, her husband." *Id.* at 353. In "her capacity as owner," she applied for and purchased insurance coverage for herself, her husband, and any other employees of her company (of which there were none) through the "Multiple Employer Trust Signature II, an insurance benefit program offered by the Time Insurance Company." *Id.* The story that unfolded is a familiar one: The insured incurred substantial medical bills; the insurance company denied benefits; and the insured sued the company. The plaintiff commenced the action in state court. Arguing ERISA preemption, the defendants sought removal to federal court. The dis-

---

4. *See generally* 29 U.S.C. § 1132(a)(1)(B) (providing for civil actions "to recover benefits due to [a participant or beneficiary] under the terms of [an ERISA] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

trict court denied removal, however, based on its determination that the insurance plan that the plaintiff had purchased was not an employee benefits plan under ERISA. *See id.* at 358.

The differences between the present case and *Meredith* are striking. The claim here is focused entirely upon Arnold's participation in the Local 807 Plan, a claim dealing with the core issues governed by ERISA, whereas *Meredith* addressed generic medical insurance claims that might or might not be brought under the ERISA umbrella because of the insurance contract. The distinction is further evidenced by the fact that Arnold, in contrast to the plaintiff in *Meredith,* did not purchase an insurance policy or plan, set up a retirement account, or establish or maintain a plan or policy that was separate and distinct from the Fund and the Local 807 Plan. Indeed, there is nothing at issue in this case other than the Local 807 Plan, and it is that plan to which we must look in assessing jurisdiction.

■ We thus examine whether ERISA governs Arnold's participation in the Local 807 Plan and any claims relating thereto. According to the plain terms of the statute, ERISA "shall apply to any employee benefit plan if it is established or maintained— (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both." 29 U.S.C. § 1003(a).

> The term "employee organization" means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to

employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

29 U.S.C. § 1002(4).

We conclude that the Local 807 Plan falls under the provisions of this statute. First, there is no dispute that Local 807 is an organization that represents employees in an industry affecting commerce, as defined in Section 501 of the Taft–Hartley Act, 29 U.S.C. § 142, and, thus, that it is an "employee organization" within the meaning of Section 3(4) of ERISA, 29 U.S.C. § 1002(4). Likewise, there is no dispute that the Local 807 Plan is governed by ERISA in certain contexts—to use Defendants' terminology, in "qualified-'employer' instances." Indeed, this Court has previously affirmed a district court judgment finding the very Fund at issue here to be an ERISA-protected plan. *See Mangan v. Finkelstein,* 1991 WL 73967, at \*1 (S.D.N.Y. May 2, 1991) ("[T]he Local 807 Labor–Management Pension Fund . . . is a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A)."), *aff'd,* 956 F.2d 1160 (2nd Cir.1992) (table decision); *see also Peckham v. Bd. of Trs. of Int'l Bhd. of Painters,* 653 F.2d 424, 426 (10th Cir.1981) (noting, in a case involving two sole proprietorships contributing to a union pension fund, that the union pension fund "represents the classic example of an ERISA employee pension benefits plan"). Clearly, then, the Local 807 Plan is a quintessential example of an "employee benefits plan" under ERISA.

Nevertheless, Defendants insist that "the mere fact that the Trustees administer a multi-employer plan" that may be an ERISA plan in certain "qualified-'employer' instances" does not mean that the claims advanced by Arnold are governed by ERISA. We find no merit in Defen-

dants' position on this point, which we discern to be little more than a sophistic attempt to claim the benefits of ERISA in certain contexts while avoiding its obligations in other, less convenient settings.

Further, as the United States Department of Labor argued before the Supreme Court, dividing a multi-employer pension plan into "ERISA and non-ERISA components" would be highly problematic for a number of reasons. *See* Brief for the United States as Amicus Curiae Supporting Petitioners, 2003 WL 21953912, at *9, *in Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004). For one, dividing a plan in such a way "would create different and unequal rights and remedies for working owners and other employees who are covered by the same plan." *Id.*

> [In addition,] splitting a plan [this way] would be administratively unworkable under both the Internal Revenue Code and Title I of ERISA. For example, a pension plan must be either tax-qualified or not; it cannot be tax-qualified in part. Similarly, many fiduciary duties run to the plan as a whole. In a traditional defined benefit plan, for instance, such duties could not attach only to plan assets earmarked for certain employees because plan assets are not segregated into individual accounts.

*Id.* We find the agency's arguments persuasive.

 Accordingly, we hold that if a benefits plan is an ERISA-qualified employee benefits plan in some circumstances, then it is an ERISA-qualified employee benefits plan in *all* circumstances. This approach not only "avoids the anomaly that the same plan will be controlled by discrete regimes," but furthers "ERISA's goal," which, as "[the Supreme] Court has emphasized, is 'uniform national treatment of pension benefits.'" *Yates*, 124 S.Ct. at

1341 (quoting *Patterson v. Shumate*, 504 U.S. 753, 765, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992)).

Our opinion in *Marcella v. Capital District Physicians' Health Plan* provides no exception from this essential principle. In that case, this Court held that the benefits plan at issue, which was maintained by a chamber of commerce in Upstate New York, was not an "employee benefits plan" under ERISA, because the at-issue "group or association" (i.e., the chamber) "contained non-employers" and, thus, could not be deemed an " 'employer' within the meaning of ERISA." *Marcella*, 293 F.3d at 49. There, however, this Court was constrained to apply a different statutory provision than that at issue in the present case. *See id.* at 47 ("We first address defendant's contention that . . . the Chamber Plan is itself an ERISA plan. To answer this question, we must [ ]turn to ERISA's definition of 'employee benefit plan,' which states that such a plan must be, *as relevant here*, 'established or maintained by an employer.'") (quoting 29 U.S.C. § 1002(1) (emphasis added)).

Here, the Magistrate Judge and the District Court seem to have overlooked the disjunctive nature of the ERISA statute, which provides:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer *or* by an employee organization, *or by both*, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . .

29 U.S.C. § 1002(1) (emphases added); *see also id.* § 1003(a). As noted above, Local 807 is an "employee organization," pursuant to § 1002(4), and, accordingly, the Local 807 Plan is an "employee benefits plan" governed by ERISA. Therefore, Arnold—

as one who has been denied participation in, and the enjoyment of benefits under, an ERISA-governed employee benefits plan to which he contributed for two-and-a-half decades—may certainly pursue his claims under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B).

In light of all the foregoing, we conclude that the District Court erred in determining that it lacked subject matter jurisdiction to consider Arnold's claims for pension benefits. The various remaining substantive issues presented in this case—i.e., whether Arnold's status is that of an employee, an employer, a sole proprietor, or some other classification, and how that status impacts his eligibility to participate in the Local 807 Plan, in light of the various statutes, executive regulations, executive advisory letters, and recent precedents that are implicated in this case—are matters to be decided by the District Court upon remand.

Nonetheless, for the benefit of that court, we note that, in oral argument before this Court, Defendants essentially conceded that their position in this matter—i.e., that Arnold should be denied *both* his pension benefits *and* the value of his contributions to the Fund—is fundamentally unfair.[5] When pressed on this point, counsel for Defendants posited that ERISA does not necessarily compel a "fair" result.

 In interpreting the ERISA statute, however, we are constrained to recognize that one of the stated purposes of the statute is to "assur[e] the equitable character of [employee benefit] plans." 29 U.S.C. § 1001(a); *see Gallione v. Flaherty,*

70 F.3d 724, 727 (2d Cir.1995). We are confident that the District Court, in exercising jurisdiction over the Local 807 Plan, will keep this overarching purpose in mind. Moreover, "it is well-settled that ERISA grants the court wide discretion in fashioning equitable relief to protect the rights of pension fund beneficiaries." *Katsaros v. Cody,* 744 F.2d 270, 281 (2d Cir.1984). Thus, we are also confident that the District Court will exercise its discretion appropriately in formulating any equitable relief to which Arnold may be entitled.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.

---

**5.** Also notable in this context is the fact that the Trustees appear to have conceded that, in their view at least, the circumstances surrounding Arnold's situation in relation to the Fund, "including the findings in the [1981] arbitration award," are indeed "extraordinary." *See generally Devlin v. Transp. Com-*munications *Int'l Union,* 173 F.3d 94, 102 (2d Cir.1999) (noting the requirement of "extraordinary circumstances" to pursue a promissory estoppel claim in an ERISA case); *accord Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151 (2d Cir.1999).