Deu THAPA, Petitioner,

v.

Alberto GONZALES, Attorney General of the United States, Respondent.

Docket No. 06–1973–ag Con
[06–1477–ag Lead].

United States Court of Appeals,
Second Circuit.

Argued: May 30, 2006.

Decided: Aug. 16, 2006.

Justin T. Conlon (Michael J. Boyle, of counsel), Law Offices of Michael Boyle, North Haven, CT, for Petitioner.

David S. Rubenstein, Assistant United States Attorney (Sarah S. Normand, Assistant United States Attorney, of counsel) for Michael J. Garcia, United States Attorney for the Southern District of New York, for Respondent.

Before SACK, KATZMANN, Circuit Judges, and MURTHA, District Judge.*

KATZMANN, Circuit Judge.

This motion presents an issue of first impression in this Circuit: whether we have jurisdiction under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, to stay an order of voluntary departure issued by an immigration judge or the Board of Immigration Appeals. Having concluded that we do, and that the peti-

---

* The Hon. J. Garvan Murtha, United States District Judge for the District of Vermont, sitting by designation.

tioner here, Deu Thapa, had met the traditional standards for a stay, we previously granted the motion for a stay in a short order stating that an opinion would follow. We now explain the reasoning behind that decision.

We hold that we have the authority under 28 U.S.C. § 2349(b), as incorporated by reference in 8 U.S.C. § 1252(a)(1), to stay an agency order pending our consideration of a petition for review on the merits, and that nothing in the Immigration and Nationality Act or its implementing regulations strips us of this authority with respect to orders of voluntary departure. We also hold that a BIA order granting voluntary departure with an alternate order of removal is a final order of removal subject to judicial review under 8 U.S.C. § 1252. Because, under the customary framework for a stay, the balance of hardships tips decidedly in Thapa's favor, a stay of his voluntary departure order is warranted here.

## I.

The complete administrative record has not been filed with the Court as part of this motion, but the following is clear from the materials submitted by the parties. Deu Thapa, a native and citizen of Nepal, was apprehended by the United States Customs and Border Protection at White River Junction, Vermont, in early 2004. At that time, as the Immigration and Naturalization Service ("INS") subsequently alleged in a Notice to Appear ("NTA"), Thapa was unable to provide a document

demonstrating his legitimate entry into the United States, nor was he able to establish the date, place, or manner of his entry into the United States.[1] Accordingly, the INS charged that Thapa was subject to removal because of his improper entry into the United States. In a subsequent NTA, the INS amended that charge to constitute overstaying a nonimmigrant visa.

During a hearing before Immigration Judge Michael W. Straus (the "IJ"), Thapa, through counsel, denied the allegation that his entry into the United States was improper but admitted the allegation that he overstayed his visa. However, Thapa sought relief from removal by challenging the validity of the NTA, arguing that it was improperly issued because it was unsigned. He also argued that the issuance of the NTA was an abuse of discretion—why is not clear—and that he was questioned at the border by an agent unauthorized by regulation to question him. In addition, Thapa moved for a continuance of the hearing so that the Connecticut Department of Labor would have time to adjudicate his request for labor certification, which, if approved, would allow him to remain in the United States and work legally. Finally, in the alternative, Thapa moved for voluntary departure, which would allow him to leave the United States willingly instead of being forcibly removed by the United States government.

The IJ rejected Thapa's argument that the NTA was improperly issued. The IJ noted that there were actually three NTAs in the record: the first one, which was

---

1. Prior to the Homeland Security Act of 2002, Pub.L. 107–296 § 441, 116 Stat. 2135, 2193 (2002), 6 U.S.C. § 202(3), § 251, the INS, an independent agency within the Department of Justice, enforced the immigration laws. That Act dissolved the INS and transferred responsibility for enforcing immigration laws to the newly created Bureau of Immigration and Customs Enforcement ("ICE") within the new Department of Homeland Security. *See United States v. Shitian Wu,* 419 F.3d 142, 146 n. 3 (2d Cir.2005). Even though the relevant documents in this case were submitted after the transfer from INS to ICE was effected, the NTA continued to refer to the charging agency as the INS. To avoid confusion, we follow suit.

unsigned; a second one, signed by Senior Patrol Agent Trahan on behalf of John C. Pfeiffer, Patrol Agent in Charge in Newport, Vermont; and a third one signed by Pfeiffer himself. The IJ concluded that "the critical NTA, i.e. the one that was filed with the Immigration Court, was signed by Mr. Pfeiffer" and was therefore proper. The IJ dismissed Thapa's argument that proper service of the NTA would have been effected only if Thapa had been personally served with the NTA signed by Pfeiffer, noting that the Immigration and Nationality Act ("INA") requires personal service of the NTA only if it is practical, and observing that the language of the unsigned NTA served on Thapa and the one signed by Pfeiffer was identical. The IJ also rejected Thapa's other concerns about the issuance of the NTA and his questioning at the boarder.

Further, the IJ declined to continue the hearing pending the determination of Thapa's labor certification. The IJ explained that the labor certification had been filed eight months before, that it would be speculative to conclude that the certification would be granted, and that there was not a sufficient basis in the record to continue the hearing.[2]

The IJ did, however, grant Thapa's alternative request for voluntary departure, ordering Thapa's departure within 60 days and payment of a $1,000 voluntary departure bond. The order provided that, if Thapa did not comply with these requirements, the voluntary departure order would convert, without further notice, to a final order of removal to Nepal.

Thapa appealed to the Board of Immigration Appeals ("BIA"). By order dated February 28, 2006, the BIA affirmed in an unpublished per curiam decision signed by one member of the Board. The BIA agreed with the IJ that Thapa had not established that he was improperly placed in removal proceedings, and in any event that Thapa had not established the requisite prejudice that is necessary to prevail on a due process claim.

As to Thapa's argument that the IJ should have agreed to a continuance of his hearing pending determination of the labor certification, the BIA concluded that "an open-ended continuance to await adjudication of a pending labor certification is not appropriate when there is no indication of how long it will take to conclude adjudication of the petition, and the basis for the continuance is speculative because there is no certainty that the petition will receive favorable consideration." The BIA specifically declined to extend its decision in *Matter of Velarde–Pacheco*, 23 I. & N. Dec. 253 (BIA 2002)—which, it explained, "indicates that a continuance may be appropriate in the case of an unadjudicated family based petition"—to apply to employment-based visa petitions, on the grounds that family reunification is the goal of the INA in a way that immigration for employment purposes is not. Moreover, the BIA explained, such a preference is reasonable because, among other grounds, the family bond is permanent while an employment relationship is temporary. The BIA failed to address the IJ's order of voluntary departure.

Thapa filed a petition for review of the BIA's order in this Court. Before any action was taken on that petition, however, the BIA reopened proceedings *sua sponte* after realizing that it had neglected to reinstate the voluntary departure order. In a reissued decision dated April 10, 2006,

---

**2.** From the language of the opinion, which refers to a "further continuance," it seems that the IJ might have granted a prior request for a continuance, but whether this is the case is not clear from the record currently before the Court.

the BIA restated its previous conclusions and additionally ordered Thapa to voluntarily depart within 60 days from the date of the order (or any extension of that time as may be granted by the Department of Homeland Security). Like the IJ's order before it, this order provided that the order of voluntary departure would convert automatically into an order of removal if Thapa did not timely depart.

Shortly thereafter, on April 19, 2006, Thapa moved this Court for voluntary dismissal of his petition for review of the first BIA order, which motion was granted. Simultaneously, he filed a new petition for review of the second BIA order and also moved for a stay of the BIA's order of voluntary departure. A month later, on May 18, 2006, Thapa submitted a separate motion for a stay of removal. We heard oral argument on these motions on May 30, 2006, and issued our order granting Thapa's motion for a stay of the BIA's order of voluntary departure on June 7, 2006. A briefing schedule for the petition on the merits has not yet been set.

## II.

### A. *Overview: Voluntary Departure*

The existence of voluntary departure enables aliens identified by the government as being illegally present in the United States to leave the country of their own accord without being forcibly removed by the government. The statute provides for two types of voluntary departure, one available in lieu of removal proceedings or before the conclusion of removal proceedings, *see* 8 U.S.C. § 1229c(a), and the second available after removal proceedings have been completed, *see* 8 U.S.C. § 1229c(b).

Almost any alien—with the exception of those who have been convicted of an aggravated felony and those who have engaged in terrorist activities or are associated with terrorist organizations—is eligible for the first type of voluntary departure. 8 U.S.C. § 1229c(a)(1). Qualifying aliens may receive a grant of voluntary departure from the Attorney General for a period of up to 120 days, although in certain circumstances an alien may obtain a waiver from this time frame for medical treatment. 8 U.S.C. § 1229c(a)(2). The Attorney General may but need not require the alien to post a voluntary departure bond that will be returned after proof that the alien has left the United States within the required time frame. 8 U.S.C. § 1229c(a)(3).

The second type of voluntary departure is more restrictive. In order for an alien to obtain voluntary departure in lieu of removal at the conclusion of removal proceedings, an IJ must find that (1) the alien was physically present in the United States for at least a year before the Notice to Appear was served; (2) the alien is and has been a person of good moral character for the five years leading up to the alien's application for voluntary departure; (3) the alien is not subject to deportation for having been convicted of an aggravated felony or for engagement in terrorist activities or association with terrorist organizations; and (4) the alien has established by clear and convincing evidence that he or she has both the means and the intention to depart the United States within the time specified. 8 U.S.C. § 1229c(b)(1). Grants of voluntary departure under this subsection are valid for up to only sixty days, instead of the 120 days for voluntary departure granted before the completion of removal proceedings. 8 U.S.C. § 1229c(b)(2). Unlike the discretionary standard for voluntary departure bonds under the previous subsection, the alien is always required to post a voluntary departure bond in order to obtain voluntary departure under this subsection. 8 U.S.C.

§ 1229c(b)(3). Thapa's grant of voluntary departure was of this second type.

Voluntary departure under either subsection benefits both the government and the alien who obtains it. The government need not expend resources removing the alien from the United States; moreover, an alien subject to a voluntary departure order is likely to leave the country more quickly than the government would execute an order of removal. *See, e.g., Rife v. Ashcroft,* 374 F.3d 606, 614 (8th Cir.2004). In turn, aliens benefit from voluntary departure because

> it allows them to choose their own destination points, to put their affairs in order without fear of being taken into custody at any time, to avoid the stigma and various penalties associated with forced removals (including extended detention while the government procures the necessary travel documents and ineligibility for readmission for a period of five or ten years, *see* 8 U.S.C. § 1182(a)(9)(A)), and it facilitates the possibility of return to the United States, for example, by adjustment of status.

*Lopez–Chavez v. Ashcroft,* 383 F.3d 650, 651 (7th Cir.2004). Thus, both the government and an alien can benefit when an alien leaves the country via a voluntary departure rather than a forcible removal.

At the same time, it is important to recognize that, for an alien, serious consequences result from either noncompliance or compliance with a voluntary departure order. On the one hand, failing to depart voluntarily within the specified time period results in a civil penalty of between $1,000 and $5,000 as well as ineligibility for a period of ten years for most immigration benefits, including cancellation of removal, adjustment of status, and change of nonimmigrant classification. 8 U.S.C. § 1229c(d). On the other hand, an alien

who departs voluntarily is barred from admission to the United States for a period of either three years (for aliens who had been present in the United States for more than 180 days but less than one year) or ten years (for aliens who had been present in the United States for more than one year), regardless of what legal avenues for a change of immigration status might otherwise be available to him or her. 8 U.S.C. § 1182(a)(9)(B). Additionally, while the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") revised the INA to permit aliens to appeal adverse decisions of the BIA even after leaving the United States, *see Rife,* 374 F.3d at 615, such a long–distance appeal is logistically difficult. Moreover, for those aliens who have sought asylum, withholding of removal, or relief under the Convention Against Torture and who may find it difficult as a practical matter to depart to any other country than the one they wish to flee, departing may present real danger. *See id.* "Thus," as the Seventh Circuit has explained, "aliens who are granted voluntary departure face a difficult choice: either follow the rules, depart voluntarily, and obtain a few benefits, at the price of serious or fatal difficulty in pursuing relief and exposure to intolerable conditions in the country of destination; or break the rules by failing to leave, accept the penalties associated with that failure, and continue to press any appeals." *Lopez–Chavez,* 383 F.3d at 651.

**B.** *Judicial Authority to Stay Voluntary Departure Orders*

■ This motion presents an issue of first impression in this Circuit: whether, notwithstanding the 60–day statutory time frame for voluntary departure, we have the authority to stay the order of voluntary departure pending consideration of a

petition for review on the merits. The First, Third, Sixth, Seventh, Eighth, and Ninth Circuits have all concluded that the Courts of Appeals do have such authority. *See Bocova v. Gonzales,* 412 F.3d 257 (1st Cir.2005); *Obale v. Attorney Gen. of the United States,* 453 F.3d 151 (3d Cir.2006); *Nwakanma v. Ashcroft,* 352 F.3d 325 (6th Cir.2003); *Lopez–Chavez v. Ashcroft,* 383 F.3d 650 (7th Cir.2004); *Rife v. Ashcroft,* 374 F.3d 606 (8th Cir.2004); *El Himri v. Ashcroft,* 344 F.3d 1261 (9th Cir.2003). Only the Fourth Circuit has reached the opposite result. *See Ngarurih v. Ashcroft,* 371 F.3d 182 (4th Cir.2004). We believe that the majority position is the better one, and we adopt it here.

We begin with the presumption set forth in 28 U.S.C. § 2349(b), as incorporated by reference in 8 U.S.C. § 1252(a)(1), that, in reviewing orders of federal agencies, "the court of appeals in its discretion may restrain or suspend, in whole or in part, the operation of the order pending the final hearing and determination of the petition." 28 U.S.C. § 2349(b); *see also Rife,* 374 F.3d at 615 (citing Fed. R.App. P. 8 for the proposition that "[t]he grant or denial of a stay pending appeal is a customary part of the judicial function"). While "Congress may restrict our power to grant stays," *Rife,* 374 F.3d at 615, the restriction must come from some statutory provision.

The government argues that "the totality of the legislative scheme" provides that restriction. In particular, the government points to (a) two provisions from the section of the INA governing judicial review, 8 U.S.C. § 1252; (b) one provision from the section of the INA governing the procedures for voluntary removal, 8 U.S.C. § 1229c; (c) one provision of the corresponding regulation, 8 C.F.R. § 1240.26; and (d) the statute governing stays of agency orders, 28 U.S.C. § 2349(b). We disagree with the government's reading of each of these provisions.

■ As to the section of the statute governing judicial review, 8 U.S.C. § 1252(a)(2)(B) provides that "Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 240B [codified as 8 U.S.C. § 1229c, on voluntary departure]." The government asks us to read this provision as stripping us of jurisdiction to issue stays of voluntary departure orders. Yet in granting a stay of an order of voluntary departure, we would not be reviewing any judgment regarding the voluntary departure itself—*i.e.,* whether the alien did or did not meet the statutory qualifications for a voluntary departure. *See* 8 U.S.C. § 1229c(b)(1). Rather, we would be putting a hold on the operation of the order while we reviewed the merits of the underlying petition for review. *See Bocova,* 412 F.3d at 267; *Lopez–Chavez,* 383 F.3d at 652; *Rife,* 374 F.3d at 615; *El Himri,* 344 F.3d at 1262. This provision cannot fairly be stretched to prohibit stays of voluntary departure orders.

■ The government also points to 8 U.S.C. § 1252(b)(3)(B), which provides that "[w]ith respect to review of an order of removal . . . [s]ervice of the petition [for review] . . . does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." The government notes that this provision specifically mentions stays of removal orders but does not provide for stays of voluntary departures, and reads the absence of the former as a prohibition. But in our view this reading is also a stretch, as the provision is not framed as an affirmative list of the court's powers with regard to stays; instead, its narrow focus is on the fact that stays of removal are not automatic but must be specifically

granted by a court, a change put in place by the IIRIRA. *See Rife,* 374 F.3d at 615. Moreover, even if this provision were ambiguous regarding the availability of stays of voluntary departure—which we do not believe it to be—"statutory ambiguities ordinarily are to be construed in favor of the alien in the immigration context." *Bocova,* 412 F.3d at 267 (citing *INS v. St. Cyr,* 533 U.S. 289, 320, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)).

■ As to the section of the statute governing the procedures for voluntary removal, the government points to 8 U.S.C. § 1229c(f): "No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure [after the conclusion of removal proceedings], nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure." Once more, while the government urges us to read this provision broadly, its plain terms do not permit such a reading, as neither the first half nor the second half of the provision describes the instant situation. This is not an appeal from a *denial* of a request for an order of voluntary departure; to the contrary, the request for an order of voluntary departure was *granted,* and the appeal is of the IJ's rejection of Thapa's other arguments—which went to his substantive removability, rather than the manner of his departure—at the hearing. Nor are we considering "any claim with respect to voluntary departure" and issuing a stay of *removal* in the meantime; again, Thapa is not challenging the issuance of the voluntary departure order (which, indeed, he sought) but rather the finding of his removability in the first place, and the question is whether we can issue a stay of *voluntary departure.* Indeed, the fact that this provision—which specifically sets forth one type of stay that cannot be issued—does not state that stays

of voluntary departure are impermissible actually lends some support to the idea that Congress did not mean to bar them. In this respect, the lack of an exhaustive list here is different from the provision for stays of removal discussed in the previous paragraph, because this list is designed to circumscribe the powers of the court with respect to voluntary departures, whereas the reference to stays of removal discussed above is not framed as a list of the court's powers.

■ Next, as to the regulatory provision governing voluntary departure, the government points to 8 C.F.R. § 1240.26(f), which in relevant part reads as follows:

> Extension of time to depart. Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs. . . . In no event can the total period of time, including any extension, exceed 120 days [for voluntary departure without instituting removal proceedings] or 60 days [for voluntary departure at the conclusion of removal proceedings]. . . .

According to the government, this section means that only these named individuals within the Executive Office for Immigration Review ("EOIR") have the authority to allow the alien to remain in the country for any longer than the order of voluntary departure provides, and the total number of days that an alien can stay in the country after the issuance of such an order is no more than 60 days. Again, we think this is a misreading. This provision does not purport to say anything about the jurisdiction of the Courts of Appeals. The title of the regulation is "Voluntary Departure—authority of the Executive Office for

Immigration Review," and as that title indicates, its focus is on what powers the EOIR has, not on what powers the courts possess or lack. *Cf. Zazueta–Carrillo v. Ashcroft*, 322 F.3d 1166, 1178 (9th Cir. 2003) (opinion of Berzon, *J.*, concurring) ("[T]he fact that IIRIRA's language commits the voluntary departure decision to the executive branch does not limit our equitable authority to grant a stay of the voluntary departure period. The statutory language that discusses removal is just as unequivocal about executive primacy in making removal decisions, yet we stay these orders using our equitable authority all the time."); *see also El Himri*, 344 F.3d at 1262 ("Because this court's equitable authority is distinct from the District Director's authority to grant extensions of the voluntary departure time period, this court's grant or denial of a motion for stay of the voluntary departure time period shall not interfere with the District Director's authority to grant an extension of the voluntary time period . . . .").

In its final attempt to locate a statutory restriction on our authority to issue stays of voluntary removal orders, the government reads 28 U.S.C. § 2349(b), as incorporated by reference in 8 U.S.C. § 1252(a)(1), to permit a court of appeals to "suspend . . . the operation of the order pending the final hearing and determination of the petition" only where the court has jurisdiction to review the order itself; because we may not review the voluntary departure order itself, the government asserts that we may therefore not stay it. In effect, the government replaces "determination of the petition" with "review of the order." But this is not what the provision says. Nor does anything in 8 U.S.C. § 1252(b)—which 8 U.S.C. § 1252(a) says may place some exceptions on the scheme of which 28 U.S.C. § 2349(b) is a part— support the government's interpretation. As explained above, 8 U.S.C. § 1252(b)

simply makes no mention of stays of voluntary departure.

The government also makes two legal arguments less grounded in particular statutory or regulatory provisions, neither of which we find persuasive. The government explains that the fact that the IIRIRA permits aliens to pursue petitions for review on the merits even after they have departed—in contrast to the previous scheme, under which an alien who had left the country was foreclosed from obtaining judicial relief—means that aliens need no longer choose between departing voluntarily and pursuing judicial relief. *See, e.g., Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir.2001) (emphasizing that new regime allows aliens to pursue an appeal from abroad). According to the government, the absence of this painful choice vitiates the need for a stay of voluntary departure. Yet as we have explained, those aliens who have left voluntarily while their petition on the merits is pending continue to face burdens in obtaining all the relief they might have received had they remained in the country with legal authorization during the pendency of their appeal, ranging from the bar on reentry and the difficulties of pursuing an effective appeal while abroad to the potential difficulties faced by those who do not wish to return to their home countries from which they fled and who would have to find some other nation to accept them. Moreover, although the consequences of complying with a voluntary departure order are no doubt less painful after the IIRIRA because of the continued chance to pursue an appeal from abroad, nothing about this fact speaks to our power to issue stays in the first instance.

The government also argues that the cap on the number of days within which an alien may voluntarily depart establishes Congress's intent to get aliens who

have agreed to depart to leave the country quickly. According to the government, the fact that the cap decreases from 120 days for aliens who agree to depart before a hearing to 60 days for aliens who are granted voluntary departure after a hearing demonstrates Congress's intent "to encourage aliens to forego protracted litigation and to circumscribe voluntary departure relief relative to how much time and effort are spent by the Government in having to litigate an alien's challenge to removability." But since an alien who has departed voluntarily may still pursue an appeal on the merits, it is unclear how the government would be saved any time and effort at all if we held that we could not issue stays. Whether the alien is litigating from the United States or elsewhere has no bearing on the work the government must do to oppose an appeal. And while it may be Congress's intent that aliens who have agreed to voluntary departure leave quickly, it is too much to infer that Congress meant to strip courts of their ability to stay orders of voluntary departure. To the contrary, "if it were Congress's intention to divest the courts of appeals of authority to suspend voluntary departure periods, it would have expressed that intention in a much more direct and pointed fashion." *Bocova*, 412 F.3d at 267.

Finally, the government attempts to rely on a separate line of cases holding that Courts of Appeals may not reinstate voluntary departure periods that have expired— where, in other words, the alien did not move for temporary relief from the voluntary departure order until after the deadline for such departure had passed. *See Bocova*, 412 F.3d at 266; *Rife*, 374 F.3d at 616; *Ngarurih*, 371 F.3d at 192–93; *Zazueta–Carrillo*, 322 F.3d at 1174; *Reynoso–Lopez v. Ashcroft*, 369 F.3d 275, 277 (3d Cir.2004); *Sviridov v. Ashcroft*, 358 F.3d 722, 731 (10th Cir.2004); *Mullai v. Ash-*

*croft*, 385 F.3d 635, 639–40 (6th Cir.2004); *Alimi v. Ashcroft*, 391 F.3d 888, 892 (7th Cir.2004). This argument, too, is unavailing, for it does not distinguish between the authority to keep an agency order from taking effect (which is what we are being asked to do here) and the more questionable authority to rewrite an agency's order after that order has already taken effect (which is what we would be asked to do had Thapa waited to request relief until after his voluntary departure order had automatically converted into an order of removal). That the practical effect of a reinstatement and a stay may be similar— in that the alien is permitted in both instances to remain in the country beyond the date ordered to leave by the BIA— does not mean that the same legal considerations necessarily apply to both. *Cf. Lopez–Chavez*, 383 F.3d at 652 (contrasting the power to extend the deadline for voluntary departure with the power to preserve the status quo pending judicial review). As the question of reinstatement is not presented here, we need not now take a position on that question in order to conclude that the cases on reinstatement in no way foreclose the availability of a stay. *See, e.g., Bocova*, 412 F.3d at 266–67 (holding that reinstatement of an expired term of voluntary departure is not available but that a stay of voluntary departure is); *Rife*, 374 F.3d at 616 (same).

Contrary to the government's arguments, then, we see nothing in any statutory or regulatory provision relating to voluntary departure that rebuts the presumption that courts may stay an agency order pending review of a petition on the merits.

### C. Orders of Voluntary Departure as Final Orders of Removal

While the parties vigorously argue about the provisions we have just discussed, nei-

ther party has raised what we observe to be an additional jurisdictional question: whether a BIA order granting voluntary departure, and ordering removal only in the alternative should the applicant overstay the grant of voluntary departure, is a final order of removal subject to judicial review under 8 U.S.C. § 1252. We consider this question because of our independent obligation to assure ourselves of our own jurisdiction. *See Arnold v. Lucks,* 392 F.3d 512, 517 (2d Cir.2004); *Henrietta D. v. Giuliani,* 246 F.3d 176, 179 (2d Cir. 2001). We conclude that an order of voluntary departure that includes an alternate order of removal is a final order subject to judicial review under 8 U.S.C. § 1252 once the BIA has affirmed it, as the Third Circuit has persuasively explained. *See Obale,* 453 F.3d at 157–60.

■ The provision of the INA that describes final orders of removal defines such orders as those that "conclud[e] that the alien is deportable or order[ ] deportation." 8 U.S.C. § 1101(a)(47)(A).[3] Such orders

> shall become final upon the earlier of—
>
> (i) a determination by the Board of Immigration Appeals affirming such order; or
>
> (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

8 U.S.C. § 1101(a)(47)(B). Because the IJ's order granting voluntary departure and ordering removal in the alternative has the effect of concluding that the alien

is removable and contains a contingent order of removal, courts—including the Supreme Court—have long held that "[t]he granting of voluntary departure relief does not result in the alien's not being subject to an outstanding final order of deportation." *Foti v. INS,* 375 U.S. 217, 220 n. 1, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); *see also Hadera v. INS,* 136 F.3d 1338, 1340–41 (D.C.Cir.1998); *Karimian–Kaklaki v. INS,* 997 F.2d 108, 112 (5th Cir.1993). This reading was consistent with INS regulations that were in place for over 35 years, providing that "an order of deportation, including an alternate order of deportation coupled with an order of voluntary departure, ... shall become final upon dismissal of an appeal by the Board of Immigration Appeals ...; or, ... it shall be final as of the date of the Board's decision." *See Obale,* 453 F.3d at 158–59 (citing former 8 C.F.R. § 243.1 (1997)).

New regulations put in place by the Department of Homeland Security in 2005 purported to change the rules of finality. The relevant provision states that

> If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, [an order of removal becomes final] upon overstay of the voluntary departure period except where the respondent has filed a timely appeal with the Board. In such a case, the order shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of any voluntary departure period granted

---

**3.** Although this provision of the INA refers on its face to orders of deportation and not orders of removal, the IIRIRA replaced the previous distinction between deportation and exclusion with the inclusive label of "removal." *See Patel v. McElroy,* 143 F.3d 56, 61 (2d Cir.1998). Moreover, the IIRIRA specifically provided that "[f]or purposes of carrying out the Immigration and Nationality Act, as

amended by this subtitle—... any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." 104 P.L. 208, 110 Stat. 3009, § 309(d)(2) (1996). Accordingly, we construe the reference to orders of deportation in 8 U.S.C. § 1101 as applying to orders of removal.

or reinstated by the Board or the Attorney General.

8 C.F.R. § 1241.1(f) (2005). This new regulation would seem to indicate that unless and until an alien overstays the period of voluntary departure, there is no final order from which to appeal. However, we agree with the Third Circuit that this interpretation of the regulation is "inconsistent with the statutory definition of a final order of removal if applied to determine finality for purposes of judicial review," because, under 8 U.S.C. § 1101(a)(47)(B), "the statutory definition of an order of removal encompasses not only orders actually ordering removal but also orders in which an IJ merely determines that an alien *is* removable and issues a contingent order of removal." *Obale*, 453 F.3d at 160. We also agree that the new regulation seems to conflict with Congress's intent in the IIRI-RA to allow aliens to pursue petitions for review from abroad: If an alien complied with an order of voluntary departure and left the country within the allotted time, no final order of removal would ever come into existence under the new regulation, and thus the alien would be prohibited from appealing. *See id.* at 160 n. 9. We cannot uphold a regulation that is inconsistent with both the plain meaning and purpose of the statute. *See, e.g., Fowlkes v. Adamec*, 432 F.3d 90, 97 (2d Cir.2005). Accordingly, like the Third Circuit, we decline to enforce § 1241.1(f). *See Obale*, 453 F.3d at 160 and n. 9 (positing additionally that § 1241.1 "may have been intended solely to specify when an order of removal may be executed, as opposed to when an order of removal is final for purposes of [judicial] review"); *cf. Kanacevic v. INS*, 448 F.3d 129, 134–35 (2d Cir.2006) (declining "to elevate form over substance" in the interpretation of what constitutes a final order of removal and therefore treating a denial of asylum in an asylum-only proceeding as "the functional equivalent of a removal order").

Because orders of voluntary departure are final orders of removal for the purposes of judicial review, and because the provisions in the INA governing voluntary departure do not strip us of our traditional authority to stay agency orders pending consideration of petitions for review on the merits, we hold that stays of voluntary departure orders are available to those aliens who can meet the standard for a stay.

D. *Whether a Stay of Voluntary Departure Should Issue Here*

█ The parties agree that if we hold that we have the authority to issue a stay of the order of voluntary departure—as we now have—the usual criteria for obtaining injunctive relief apply. Our task is therefore to balance "the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest." *Mohammed*, 309 F.3d at 100 (applying these criteria to the issuance of stays of removal); *see also El Himri*, 344 F.3d at 1262–63 (applying these criteria to the issuance of stays of voluntary departure); *Nwakanma*, 352 F.3d at 328 (same). We have treated these criteria somewhat like a sliding scale, citing approvingly other circuits' formulation that "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors" and explaining that "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Mohammed*, 309 F.3d at 101 (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977) (internal citation marks and changes omitted) and

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991) (internal change omitted)).

Applying this standard here, we conclude that the stay should issue because Thapa has demonstrated some possibility of success and the balance of hardships tips decidedly in his favor.[4]

According to the limited papers before us at this stage, Thapa makes two different arguments in his petition for review: first, that he was served with an invalid NTA in that the NTA was not issued by any of the officers listed in 8 C.F.R. § 239.1(a) as being authorized to so issue NTAs, and second, that the BIA abused its discretion by denying his motion for a continuance based on a pending labor certification.

We doubt that Thapa has much likelihood of success on the first argument. Notwithstanding his citation to *Montilla v. INS,* 926 F.2d 162 (2d Cir.1991), in which we remanded to the BIA a case in which the agency had declined to follow its own regulation, the regulation at issue in that case involved the petitioner's right to be represented by counsel at deportation proceedings, and the petitioner had definitely established prejudice. We do not believe that the mere lack of a signature on the NTA, where the proper signature was on the NTA submitted to the immigration court and where the substance of the NTAs was the same, rises anywhere near this level.

However, we believe that Thapa has a somewhat stronger chance of success on the second argument. Although we have recently issued two decisions finding no abuse of discretion in IJs' refusals to grant continuances and placing a heavy burden on the petitioner to establish abuse of discretion, we agree with Thapa that those decisions are distinguishable. In *Morgan v. Gonzales,* 445 F.3d 549 (2d Cir.2006), we held that there was no abuse of discretion in denying a continuance so that a second petition to adjust status on the basis of a marriage could be adjudicated where the marriage in question had already been determined not to be bona fide. In contrast, Thapa's labor certification had never been denied, and he was proceeding in good faith. In *Sanusi v. Gonzales,* 445 F.3d 193 (2d Cir.2006) (per curiam), we found no abuse of discretion in denying a continuance where the petitioner had already been granted two continuances and was simply seeking to put more medical evidence in the record to support a CAT claim (and where there had been an adverse credibility finding on the other claims). Here, in contrast, Thapa's labor certification was entirely out of his hands at the time of the hearing; there was nothing he could do to move the process along, and he had not been found incredible on any point.

A case that may further work in Thapa's favor is the Seventh Circuit's decision in *Subhan v. Ashcroft,* 383 F.3d 591 (7th Cir. 2004), in which the court found (although not under abuse of discretion review) that the IJ erred by not granting the petitioner a third continuance where the ground for the application was adjustment to status based on employment entitlement. The court observed critically that the denial was based simply on the fact that the labor authorities had not acted yet—a circumstance entirely out of the petitioner's control—instead of anything more particular-

---

4. We note that our preliminary assessment of Thapa's likelihood of success on the merits is not exhaustive; we are without the benefit of full briefing and oral argument on the matter. We further note that this assessment in no way limits the decision of the separate panel that will ultimately be charged with deciding the merits of Thapa's petition for review.

ized to the alien *(e.g.,* he had behaved in a dilatory fashion, he was unqualified for employment certification, etc.) or more policy-based *(e.g.,* an illegal alien should not be able to delay his removal beyond a year). *See id.* at 593–94. The court also emphasized the difficulty in speeding up the labor departments' procedures and the lack of power an alien has with respect to the labor departments' actions. *See id.* at 593 ("He endeavored—with all due diligence, so far as appears—to obtain them; but the wheels of bureaucracy grind slow, and at the end of six months he had not succeeded in obtaining them and so he sought and was granted a further six-month continuance. Again through no laxity or other fault on his part, the labor departments did not act on his application within the further six-month period.").[5]

While we cannot conclude on the record before us that, against this legal background, Thapa will ultimately prevail on the merits, we can conclude that Thapa has raised a substantial enough question to pass this first threshold.

As to the question of irreparable harm, "this Circuit has granted a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant." *Mohammed,* 309 F.3d at 101. Even if Thapa's likelihood of success is not overwhelming, we agree with Thapa that he will face irreparable harm in the absence of a stay. On the one hand, if he were to depart voluntarily by the BIA's deadline, he would be inadmissible for ten years under 8 U.S.C. § 1182(a)(9)(B)(i)(II), which provides that "[a]ny alien (other than an alien lawfully admitted for permanent residence) who ... has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible." Because Thapa falls into this category, even his approved employment certification would do him no good; no legal admission would be available to him for the next decade. On the other hand, if Thapa did not depart voluntarily by the deadline, he would also be prohibited from adjusting status based on the approved employment certification for ten years because of the consequences of violating orders of voluntary departure. *See* 8 U.S.C. § 1229c(d). The government argues that any harm Thapa faces as a result of not leaving the country is of his own doing and so is not irreparable; but given the catch–22 in which Thapa finds himself, we do not find that argument compelling.

In contrast, the government has not articulated any cognizable injury that it will suffer if Thapa receives a stay pending appeal. Moreover, we cannot see how the public interest would suffer from our grant of a stay. We agree with the government that there is a public interest in enforcing bargains between aliens and the government, but we do not see how granting a stay here undoes those bargains. There is

---

5. It is true that, unlike in *Subhan,* the BIA here did give a reasoned policy explanation for why open-ended labor certification processes, unlike family-based petitions, should not give rise to endless continuances. But whether this explanation can withstand scrutiny is a matter that deserves fuller consideration. We raise the question—although we leave to the merits panel resolution of the answer—of whether a system that specifically provides for cancellation of removal on the basis of employment certification can escape being arbitrary and capricious where it does not afford adequate time for a petitioner to obtain such labor certification, or where there is no reasoned standard for what length of time would be adequate. In this context, we note that Thapa obtained labor certification from the U.S. Department of Labor on November 21, 2005, approximately thirteen months after the IJ denied Thapa's request for a continuance.

no indication that Thapa will not carry out his agreement to leave voluntarily within the specified time frame in the event that we ultimately deny his petition for review. In the meantime, Thapa points out that he has no criminal history, he is not a danger to the security of the United States, and he has a job offer from a United States employer who is unable to fill the slot with a qualified American employee. In light of this background, we do not believe that the public is harmed by his staying while we consider his petition on the merits.

Accordingly, we reaffirm our grant of a stay of the order of voluntary departure.

### III.

We now turn briefly to Thapa's motion for a stay of removal. While there is general agreement that the same overall standard applies to stays of voluntary departure orders as to stays of removal orders, our sister circuits nonetheless differ in their approaches to motions to stay these different types of orders. The Ninth Circuit, for example, treats motions to stay the two types of orders as identical, *see Desta v. Ashcroft*, 365 F.3d 741, 749–50 (9th Cir.2004), while other circuits have observed that "there may be cases where the equities relevant to the two types of stay will balance differently." *Rife*, 374 F.3d at 616; *see also Bocova*, 412 F.3d at 270; *Alimi*, 391 F.3d at 892–93. We agree with this latter observation and, accordingly, do not conclude that granting Thapa's motion for a stay of the voluntary departure order will necessarily lead to a grant of his motion for a stay of the order of removal. Because the motion for a stay of removal in the instant case has not been fully briefed, we do not rule on it at this time.

### IV.

For the foregoing reasons, we affirm our prior grant of Thapa's motion for a stay of voluntary departure. A separate panel will consider the petition for review on the merits in the normal course.