In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-1109

VIKTORIA B. ORICHITCH,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,[1]

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A75-259-365

ARGUED JANUARY 6, 2005—DECIDED AUGUST 31, 2005

Before MANION, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Petitioner Viktoria Orichitch, a native and citizen of Ukraine, appeals a final order of removal issued by the Board of Immigration Appeals (BIA), affirming an IJ's refusal to consider her application for adjustment of status. The BIA affirmed the denial based on a statutory bar triggered by the petitioner's failure to leave the country prior to a departure date set by a previously

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have substituted the current Attorney General of the United States, Alberto R. Gonzales, for his predecessor as the named respondent.

issued voluntary departure order. Because we find that an intermediate decision by the BIA to reopen Orichitch's removal proceedings served to vacate that preexisting voluntary departure order, and with it the preclusive effect of the relevant statutes based thereon, we grant her petition for review and remand her case for proper consideration of her adjustment of status application.

## I.  BACKGROUND

Orichitch was admitted to the United States as a lawful non-immigrant visitor in June 1996 and submitted an application for asylum, but it was denied and her case was referred to an immigration judge (IJ).

Having remained in the U.S. without authorization beyond the time period designated in her visa, Orichitch received a Notice to Appear from the Immigration and Naturalization Service (a department since reorganized under the auspices of the Department of Homeland Security (hereinafter, "DHS," "Immigration Services," or "Service")) on November 26, 1997, charging her as removable pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act (INA) (codified at 8 U.S.C. § 1227(a)(1)(B)). On March 7, 1998, before her first IJ hearing, Orichitch married Brian Brown, a U.S. citizen, who on August 6, 1998 filed an I-130 immigrant visa petition on his wife's behalf, seeking to classify her as an immediate relative and immune from visa numerical limitations.

Petitioner's first hearing before the IJ on the removal charges took place on February 10, 1999. The I-130 visa petition, which at that time was before a different immigration officer within Immigration Services, was not a subject of this hearing. Pinning all her hopes on the I-130 visa petition, Orichitch chose not to proceed with her application for asylum at that hearing, thereby waiving the application altogether. The IJ found her removable as charged and

granted her the only relief available to her at that time—voluntary departure. Pursuant to the IJ's decision, Orichitch was to depart voluntarily by April 12, 1999. The IJ specifically warned the petitioner that if she remained in the U.S. beyond the authorized date for voluntary departure that she would be ineligible for certain forms of relief from removal, including adjustment of status, for ten years from the date of scheduled departure.

At this point, Orichitch found herself in a race with the clock. With a hard date for voluntary departure now looming, Orichitch could only hope that her I-130 application, which at that time was winding its way through different bureaucratic channels within the immigration services, would be adjudicated before she was required to leave. Despite Orichitch's attorney's repeated requests for prompt adjudication, and promises from the attendant immigration officer to provide the same, the application meandered though the process. So drawn out was the process that Orichitch had to request an extension of her voluntary departure date. Her request was granted on April 8, 1999, extending her date for voluntary departure to June 12, 1999.

Orichitch's I-130 visa petition was finally approved on May 13, 1999—almost a full month before her extended voluntary departure date. With the bona fides of her marriage confirmed, Orichitch became immediately eligible for adjustment of status under INA § 245 (codified at 8 U.S.C. § 1255). However, to secure such adjustment, the petitioner had to persuade the immigration court to reopen her case. Toward that end, Orichitch began to work with then amenable Immigration Service officials toward filing a Joint Motion to Reopen. As a result, on June 7, 1999, the petitioner filed a joint motion with District Counsel representing the Immigration Service. For some unknown reason, however, District Counsel did not sign and file the joint motion with the immigration court until

June 15, 1999—three days past Orichitch's extended voluntary departure date.

The IJ denied Orichitch's Joint Motion to Reopen on May 8, 2000. In particular, the IJ found that the petitioner's failure to depart the country before the expiration of her voluntary departure period rendered her statutorily ineligible for adjustment of status pursuant to INA § 240B(d) (codified at 8 U.S.C. § 1229c(d)). The BIA, however, reversed the IJ's decision after a joint appeal was filed by Orichitch and the Immigration Service, and on February 12, 2001, "grant[ed Orichtich's] motion and remand[ed] the case for further proceedings."

Despite the BIA's explicit remand for further proceedings on the merits, and the fact that Orichitch's motion to reopen was the only matter before the BIA when it ordered that remand, the IJ, in an order dated May 2, 2002, "concluded that the Board never actually re-opened this case." In an attempt to explain the inexplicable, the IJ stated at a hearing that same day: "[A] lawful order of the Board has to take priority over my order [of May 8, 2000], if it shows awareness of the circumstances and facts and law of the case. But I don't think this order by the Board does." By so avoiding his obligation to follow the mandate of the BIA, the IJ found the case never reopened. And having found the case never reopened, he reasoned that the February 10, 1999, voluntary departure order continued to operate, and that Orichitch remained barred from seeking adjustment of status based on her presence in the country beyond her voluntary departure date. The IJ refused to consider petitioner's application for adjustment of status.

Orichitch appealed the IJ's decision to the BIA. On appeal, the BIA, in a decision dated December 23, 2003, made clear that its prior remand had indeed served to reopen Orichitch's removal proceedings. The Board

stated: "[W]e will consider the current appeal to be an appeal of a *reopened proceeding* in which adjustment of status has been denied by the Immigration Judge on remand." (emphasis added). In a perplexing about face, the BIA upheld the IJ's refusal to consider the adjustment of status application, agreeing that Orichitch's continued presence in the country beyond the voluntary departure date left her statutorily ineligible to apply for adjustment of status. Orichitch then filed this appeal.

## II.  ANALYSIS

### A.  Standard of Review

We review the BIA's interpretation of the Immigration and Nationality Act de novo, but will defer to the BIA's interpretation of the Act where "the intent of Congress with respect to the matter at issue is not clear and if the interpretation offered by the BIA is reasonable." *Borca v. INS*, 77 F.3d 210, 214 (7th Cir. 1996). If, however, the intent of Congress is clear, both this Court and the agency must give effect to that intent. *Chevron U.S.A, Inc. v. Nat. Res. Def. Counsel, Inc.*, 467 U.S. 837, 842-43 (1984).

### B.  The Preclusive Effect of Section 240B(d) Was Vitiated By the BIA's Grant of the Joint Motion to Reopen

INA § 240B(d) provides:

> If an alien is permitted to depart voluntarily under this section and fails voluntarily to depart the United States within the time period specified, the alien shall . . . be ineligible for a period of 10 years for any further relief under this section and [INA § 245 (the section governing adjustment of status)]. The order permitting the alien to depart voluntarily

shall inform the alien of the penalties under this
subsection.

*See also In re Shaar*, 21 I. & N. Dec. 541 (BIA 1996). There
is no dispute that Orichitch did not depart within the
specified period for her voluntary departure, or that she
was warned in the order of the consequences for failing to
do so. What remains at issue is whether Section 240B(d)
continues to operate in this case.

It does not. The BIA, by granting Orichitch's motion
to reopen on February 12, 2001, permanently disposed
of the existing Section 240B(d) issue. More precisely, the
grant of the motion to reopen disposed of the Section
240B(d) issue by disposing of the order that other-
wise triggered the operative effect of that section—the
February 10, 1999, voluntary departure order.

In *Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004),
we held that "the grant of a motion to reopen vacates the
previous order of deportation or removal and reinstates
the previously terminated immigration proceedings." *See
also Fedorca v. Perryman*, 197 F.3d 236, 241 (7th Cir. 1999)
("If Fedorca's motion to reopen his deportation proceedings
had been successful, . . . it would have abrogated the [prior]
deportation order."). Here, when the joint motion to reopen
was granted, the BIA effectively vacated the February 10,
1999, voluntary departure order (a previously entrenched
fixture of the underlying proceedings), disposing along with
it all arguments contingent upon the continued validity of
that order—namely, those predicated on Section 240B(d).
Only an order to voluntarily depart can trigger Section
240B(d), and so it follows that the vacation of such an order
would automatically dispose of the preclusive effect of a
section predicated on that order. When the BIA reopened
Orichitch's case on February 12, 2001, the matter
was returned to the IJ for adjudication on the merits of
the application both by law and by the Board's explicit
instruction.

The BIA's December 2003 order confirming that the February 2001 order had indeed served to reopen Orichitch's removal proceedings only renders its ultimate disposition of the second appeal all the more curious. Though the BIA's second order confirmed that it had in its first order reopened her removal proceedings—a disposition made possible only by disposing of the Section 240B(d) issue in the petitioner's favor—that second order also validated the IJ's refusal to reach the merits of Orichitch's application based on those same grounds that the Board had previously addressed. These two conclusions simply cannot be reconciled. Rather, on that second appeal, once the BIA confirmed that it had in fact previously reopened Orichitch's removal proceedings, it should have made clear that, by virtue of the case's reopening, Section 240B(d) no longer precluded the adjudication of the petitioner's adjustment of status application, or the consideration of her approved I-130 visa petition. Because the BIA failed to recognize that the legal barrier upon which it relied in affirming the denial of Orichitch's application was gone—indeed, removed by its very own hand—we must reverse.

## III. CONCLUSION

For the foregoing reasons, we VACATE the BIA's final order of removal and REMAND Orichitch's case for proper consideration of her adjustment of status application on the merits—merits which include an approved I-130 visa petition that uncontestedly speaks to the bona fides of her marriage to a U.S. citizen.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*