451 F.3d 60
 Reynaldo RODRIGUEZ, also known as Alejandro Perez, also known as Reynaldo Perez, also known as Cruz Reynaldo Rodriguez, Petitioner,
v.
Alberto GONZALES, Attorney General, Respondent.
 Docket No. 05-4521-ag.
 United States Court of Appeals, Second Circuit.
 Submitted: May 1, 2006.
 Decided: June 7, 2006.
 
 M. Nawaz Wahla, Hartford, CT, for Petitioner.
 Patricia L. Buchanan, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the for the Southern District of New York, on the brief; Kathy S. Marks, Assistant United States Attorney, of counsel), New York, NY, for Respondent.
 Before NEWMAN and STRAUB, Circuit Judges, and BRIEANT, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner Cruz Reynaldo Rodriguez ("Rodriguez") (A79 076 873), a native and citizen of the Dominican Republic, petitions for a review of a July 28, 2005, decision of the Board of Immigration Appeals ("BIA") affirming the February 17, 2004, decision of the Immigration Judge ("IJ") Michael W. Straus ordering Rodriguez's removal from the United States, finding him ineligible for cancellation of removal under 8 U.S.C. § 1229b(b), and denying his application for adjustment of status under 8 U.S.C. § 1255(a). We hold that: (1) 18 U.S.C. § 1542 is a crime involving moral turpitude; (2) Rodriguez's conviction renders him ineligible for cancellation of removal; and (3) Rodriguez is inadmissible and precluded from adjustment of status because he fraudulently represented himself to be a United States citizen.
 
 BACKGROUND
 
 2
 The facts of this case are not in dispute. Rodriguez entered the United States on a visitor's visa on December 14, 1986. After he arrived, a friend introduced Rodriguez to an unidentified man who claimed to be an attorney able to help Rodriguez obtain citizenship. Rodriguez gave this man $1,500 and his Dominican passport. Within a month, the man provided Rodriguez with an American passport, a Social Security card, and a New York City birth certificate.
 
 
 3
 In 1990, Rodriguez was seriously injured, and following his recovery, he returned to the Dominican Republic. While Rodriguez was outside the country, his young daughter damaged his passport. Rodriguez obtained a new passport from the United States embassy in Santo Domingo.
 
 
 4
 In 1992, Rodriguez moved his family back to the United States and remained here for ten years. In 2002, Rodriguez noticed that his passport was about to expire, and on May 9, 2002, he sent in a renewal application that included his expired passport and the birth certificate indicating that he was born in New York City.
 
 
 5
 On January 9, 2003, a grand jury indicted Rodriguez with one count of violating 18 U.S.C. § 1542 (Making a False Statement in an Application for a Passport). The government placed him into removal proceedings in March 2003. On July 22, 2003, Rodriguez conceded that, although he had been admitted, he had overstayed the temporary visa he received on December 14, 1986. On October 15, 2003, he pleaded guilty to violating 18 U.S.C. § 1542.
 
 
 6
 Rodriguez contested his deportation, arguing that he was eligible for cancellation of removal or adjustment of status. The IJ rejected these claims and found that the conviction under section 1542 rendered him statutorily ineligible for both types of relief. The IJ held that Rodriguez was ineligible for adjustment of status because he could not establish admissibility as required by 8 U.S.C. § 1255(a) because he had falsely represented himself to be a citizen. See 8 U.S.C. § 1182(a)(6)(C)(ii)(I). The IJ also held that Rodriguez's conviction under section 1542 was a crime involving moral turpitude ("CIMT") and that, therefore, he was statutorily precluded from establishing eligibility for cancellation of removal. See 8 U.S.C § 1229b(b)(1)(C) (excluding from eligibility for cancellation of removal aliens convicted of a crime under 8 U.S.C. § 1182(a)(2), which includes CIMTs).
 
 
 7
 Rodriguez appealed to the BIA, which summarily affirmed the IJ's decision in a one-paragraph opinion. He filed a timely petition for review of the BIA's decision.
 
 DISCUSSION
 
 8
 The main issue on appeal is whether section 1542 is a CIMT under section 1182(a)(2)(A)(i)(I). We hold that it is, and that, therefore, the IJ correctly denied Rodriguez's application for cancellation of removal under section 1229b(b). We further hold that the IJ properly held that Rodriguez was inadmissible under section 1182(a) because he had "falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter ... or any other Federal or State law." 8 U.S.C. § 1182(a)(6)(C)(ii)(I). As a result, Rodriguez is statutorily ineligible for adjustment of status. See 8 U.S.C. § 1255(a) (requiring admissibility as a perquisite for adjustment of status).
 
 I. Jurisdiction
 
 9
 Where, as here, the BIA adopts the IJ's findings and reasoning, we review the decision of the IJ as if it were that of the BIA. Chun Gao v. Gonzales, 424 F.3d 122, 124 (2d Cir.2005). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009-546 (1996), provides in relevant part that "no court shall have jurisdiction to review any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b [cancellation of removal], 1229c, or 1255 [adjustment of status] of this title." 8 U.S.C. § 1252(a)(2)(B)(i).
 
 
 10
 Although we have no jurisdiction to review the IJ's discretionary determinations concerning either cancellation of removal or adjustment of status, see 8 U.S.C. § 1252(a)(2)(B)(i), we retain jurisdiction to review nondiscretionary decisions regarding either form of relief, see Sepulveda v. Gonzales, 407 F.3d 59, 62-63 (2d Cir.2005). Obtaining either adjustment of status or cancellation of removal is a two-step process. First, an alien must prove eligibility by showing that he meets the statutory eligibility requirements. See Mariuta v. Gonzales, 411 F.3d 361, 365 (2d Cir.2005); Drax v. Reno, 338 F.3d 98, 113 (2d Cir. 2003). Second, assuming an alien satisfies the statutory requirements, the Attorney General in his discretion decides whether to grant or deny relief. See Mariuta, 411 F.3d at 365; Drax, 338 F.3d at 113.
 
 
 11
 Because these two stages are distinct, we have jurisdiction to review whether the BIA correctly determined that the alien was eligible for either cancellation of removal or adjustment of status, see Mariuta, 411 F.3d at 367 (noting that where the ground for denial of relief is either unclear or based on a nondiscretionary ground IIRIRA's jurisdiction stripping provision does not apply). Although the Attorney General retains discretion, as the Supreme Court stated in INS v. St. Cyr, "[e]igibility that [is] governed by specific statutory standard provide[s] a right to a ruling on an applicant's eligibility even though the actual granting of relief [is] not a matter of right under any circumstances but rather is in all cases a matter of grace." 533 U.S. 289, 307-08, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (internal quotation marks omitted) (holding that AEDPA and IIRIRA did not strip the district court of habeas jurisdiction to address a challenge to the Executive's failure to exercise discretion authorized by law).
 
 
 12
 Here, the IJ held that Rodriguez failed to meet the requirements of either section 1229b(b)(1)(C) because he had been convicted of a CIMT or section 1255(a)(2) because he was inadmissible. These are nondiscretionary judgements regarding Rodriguez's eligibility for discretionary relief, and, therefore, we have jurisdiction to review both. See Sepulveda, 407 F.3d at 62-63.
 
 II. Cancellation of Removal
 
 13
 A nonpermanent resident in removal proceedings may be eligible for cancellation of removal if he or she:
 
 
 14
 (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (B) has been a person of good moral character during such period;
 
 
 15
 (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
 
 
 16
 (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.
 
 
 17
 8 U.S.C. § 1229b(b) (emphasis added). Section 1182 includes "a crime involving moral turpitude ... or an attempt or conspiracy to commit such a crime." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Section 1182 provides for certain exceptions not relevant here. See 8 U.S.C. § 1182(2)(A)(i)(II).
 
 
 18
 We afford Chevron deference to the BIA's construction of undefined statutory terms such as "moral turpitude" because of the BIA's expertise applying and construing the immigration laws. See Gill v. INS, 420 F.3d 82, 89 (2d Cir.2005) (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Because the BIA has no particular expertise in construing federal and state criminal statutes, we review de novo the BIA's finding that a particular crime of conviction falls within its definition of a CIMT. Gill, 420 F.3d at 89; Michel v. INS, 206 F.3d 253, 262 (2d Cir.2000). Our review, however, is circumscribed by the BIA's "categorical" approach to whether an offense qualifies as a CIMT, which focuses the inquiry on "the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation." Gill, 420 F.3d at 89 (quoting Dalton v. Ashcroft, 257 F.3d 200, 204 (2d Cir. 2001)).
 
 
 19
 The BIA has explained that the term "moral turpitude" generally encompasses:
 
 
 20
 conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.
 
 
 21
 Hamdan v. INS, 98 F.3d 183, 186 (5th Cir.1996) (citations omitted); accord United States ex rel. Guarino v. Uhl, 107 F.2d 399, 400 (2d Cir.1939) (L. Hand, J.) (holding that an offense must be "necessarily or inherently immoral" to constitute a CIMT under the immigration laws).
 
 
 22
 Applying this general concept to cases involving fraudulent statements made to the government, the BIA has held that crimes "impair[ing] or obstruct[ing] an important function of a department of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means" involve moral turpitude. See Matter of Flores, 17 I. & N. Dec. 225, 229 (BIA 1980). We find this interpretation reasonable, and we, therefore, proceed to review de novo whether section 1542 may be so characterized. Cf. Gill, 420 F.3d at 89-90 (deferring the BIA's definition that recklessness constitutes a CIMT, but reviewing de novo a conviction for attempted reckless assault qualified).
 
 
 23
 A violation of section 1542 requires proof that the defendant "willfully and knowingly ma[de] any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws." 18 U.S.C. § 1542. We have interpreted the requirement that the statement be made "willfully" to require proof that "the defendant provided information in a passport application that he or she knew to be false." United States v. George, 386 F.3d 383, 394 (2d Cir.2004).
 
 
 24
 In holding that section 1542 was a CIMT, the IJ relied on the BIA's decision in Matter of B____, 7 I. & N. Dec. 342 (BIA 1956). In that case, the BIA held that making a false statement in a passport application was a CIMT because "fraud and materiality [of the false statement] are elements essential to the establishment of the crime." Id. at 344. Although we ultimately agree with the BIA's conclusion, its construction of section 1542's necessary elements— to which we owe no deference—is questionable. There are some important differences between a violation of section 1542 and the commission of common law fraud. For example, because a violation of section 1542 is complete once the information is submitted, the government need not prove either actual reliance, or damages. See George, 386 F.3d at 396 (stating that a violation of section 1542 is complete when the false information is submitted to the government); see also United States v. O'Bryant, 775 F.2d 1528, 1535 (11th Cir. 1985) ("The crime is complete when one makes a statement one knows is untrue to procure a passport."). Furthermore, the BIA's conclusion that the statements must be material is also questionable as the statute does not specifically require materiality. See United States v. Hart, 291 F.3d 1084, 1085 (9th Cir.) (per curiam), cert. denied, 537 U.S. 962, 123 S.Ct. 391, 154 L.Ed.2d 318 (2002); compare 8 U.S.C. 1542, with 18 U.S.C. § 1623 (requiring that false declaration to a grand jury or court be material).
 
 
 25
 Although section 1542 may not contain every element of common law fraud, it certainly involves deceit and an intent to impair the efficiency and lawful functioning of the government. This alone is sufficient to categorize a crime as a CIMT. For example, in Flores, the BIA held that "the sale of counterfeit documents relating to alien registry impair[ed] the lawful procedures of the Immigration and Naturalization Service and thwart[ed] its purpose of requiring aliens to have proper documentation to enter the United States." 17 I. & N. Dec. at 229. In the only other court of appeals case to address the issue, the Ninth Circuit held that section 1542 was a CIMT because, although it did not necessarily require fraud, it was akin to perjury and required an intent to induce the government to issue the passport on the basis of the fraudulent statement. Bisaillon v. Hogan, 257 F.2d 435, 438 (9th Cir.), cert. denied sub nom., Bisaillon v. Sureck, 358 U.S. 872, 79 S.Ct. 112, 3 L.Ed.2d 104 (1958). Similarly in Flores, the BIA stated that "it is not necessary that the statute prohibiting [the conduct in question] include the usual phaseology concerning fraud in order for it to involve a crime of moral turpitude." Flores, 17 I. & N. Dec. at 228. It is sufficient that the crime involves "an affirmative act calculated to deceive the government." Id. at 229; see also Jordan v. De George, 341 U.S. 223, 229, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (defrauding the United States of taxes on distilled spirits held to be a CIMT); Matter of F____, 2 I. & N. Dec. 754, 757 (BIA 1947) (defrauding the government of customs duties held to be a CIMT); Matter of R____, 5 I. & N. Dec. 29, 37 (BIA 1952) (holding that making false representations to evade military service was CIMT); Matter of M____, 1 I. & N. Dec. 619, 621-22 (BIA 1943) (same). A conviction under section 1542 always involves deceit or dishonesty because it requires proof that "the defendant provided information in a passport application that he or she knew to be false." George, 386 F.3d at 394. Indeed, "no conceivable meritorious reason exists for knowingly submitting false information on a passport application." Id. at 395. Accordingly, we hold that section 1542 is a CIMT.
 
 
 26
 Rodriguez offers no arguments that challenge the characterization of section 1542 as a CIMT. Instead, he contends that he, in particular, is not guilty of a crime of moral turpitude because he honestly believed the documents were authentic and, therefore, he lacked the intent to violate the statute. As stated above, the particular facts of Rodriguez's case are irrelevant to the question of whether, as a matter of law, section 1542 is a CIMT. These arguments would have been more appropriately presented to the district court in his criminal case. Having pled guilty to the offense, he has admitted all of the elements necessary for a conviction, including knowingly submitting false information to obtain a passport. See United States v. Broce, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.").
 
 
 27
 Accordingly, we hold that the IJ did not err in concluding that Rodriguez's violation of section 1542 was a CIMT and renders him statutorily ineligible for cancellation of removal.
 
 III. Adjustment of Status
 
 28
 The IJ also correctly held that Rodriguez is inadmissible and, therefore, ineligible for adjustment of status. Under 8 U.S.C. § 1255, an alien is eligible for adjustment of his status to that of permanent resident if, inter alia, he or she "is admissible to the United States for permanent residence." 8 U.S.C. § 1255(a) (emphasis added). An alien is not "admissible" if he "has falsely represented, himself... to be a citizen of the United States for any purpose or benefit under this chapter... or any other Federal or State law." 8 U.S.C. § 1182(a)(6)(C)(ii)(I).
 
 
 29
 Rodriguez argues that although he represented himself to be a United States citizen, he did not do so falsely because he honestly believed that his old passport and birth certificate were valid because he had become a citizen. As with his argument for cancellation of removal, the fact that Rodriguez has pled guilty to a violation of section 1542 precludes him from claiming that he did not knowingly submit false information to obtain a passport. See Pichardo v. INS, 216 F.3d 1198, 1201 (9th Cir.2000) (holding that pleading guilty to making a false claim of United States citizenship in violation of 18 U.S.C. § 911 for using a false birth certificate when trying to enter the United States constituted an independent and non-waivable ground for inadmissibility under section 1182(a)(6)(C)(ii)). Because Rodriguez admitted that he represented himself to be a United States citizen and, by pleading guilty, that he knew his application contained false information, he is inadmissible and statutorily precluded from receiving adjustment of status.
 
 
 30
 Finally, as noted by the IJ, Rodriguez's claim that he honestly believed he had become an American citizen is belied by the facts. He could not have reasonably believed that the birth certificate stating that he had been born in New York City was valid, considering that he emigrated from the Dominican Republic when he was approximately 19 years old.
 
 CONCLUSION
 
 31
 For the foregoing reasons, the petition for review is DENIED. The pending motion for a stay of deportation is DENIED as moot.
 
 
 
 Notes:
 
 
 *
 The Honorable Charles L. Brieant, United States District Judge for the Southern District of New York, sitting by designation