**Harjinder SINGH, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

**Docket No. 05–5181–AG.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 21, 2006.

Decided: Nov. 8, 2006.

Nancy E. Martin, Law Office of Anthony D. Collins, P.C., Hartford, CT, for Petitioner.

Douglas P. Morabito, Assistant United States Attorney, (William J. Nardini, Assistant United States Attorney, of counsel) for Kevin J. O'Connor, United States Attorney for the District of Connecticut, for Respondent.

Before POOLER, B.D. PARKER, and RAGGI, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

## BACKGROUND

Harjinder Singh ("Singh"), a native and citizen of India, petitions for review of a decision of the Board of Immigration Appeals ("BIA"), which adopted and affirmed a decision of Immigration Judge ("IJ") Matthew J. D'Angelo ordering Singh removable and pretermitting [1] his application for adjustment of status under Section 245 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255. *See In re Harjinder Singh*, No. A 75 482 267 (B.I.A. Aug. 31, 2005), *aff'g* No. A 75 482 267 (Immig. Ct. Hartford Apr. 7, 2004).

Singh's petition raises the issue of whether the granting by an IJ of a motion to reopen vacates the effect of prior noncompliance with a voluntary departure order on an alien's eligibility for adjustment of status. We hold that it does not. Under 8 U.S.C. § 1229c(d), an alien who violates a voluntary departure order is subject to certain penalties, including ine-

---

**1.** The Oxford English Dictionary defines "pretermit" as "[t]o allow to pass without notice or regard; to overlook intentionally," as well as "to leave undone, neglect, omit" and "to interrupt." XII Oxford English Dictionary 436 (2d ed.1989). In this case, as explained more fully below, the IJ did not need to reach the question of whether Singh should be granted the discretionary relief of adjustment of status because the IJ found that Singh was legally barred from receiving such relief.

ligibility for adjustment of status for a period of ten years. Singh filed two motions to reopen his case after he had already failed to comply with a voluntary departure order. The first motion was denied; the second was summarily granted. Whether or not the granting of Singh's second motion to reopen was appropriate, it did not nullify § 1229c(d)'s preclusive effect on his application for adjustment of status or otherwise relieve him of the consequences of his failure to depart voluntarily.

Singh entered the United States without inspection in November 1996. He filed, but then withdrew, applications for asylum and withholding of removal, and IJ Gilbert T. Gembacz found Singh removable. No. A 75 482 267 (Immig. Ct. Los Angeles Aug. 31, 1999). In lieu of removal proceedings, the IJ granted Singh's request to depart voluntarily. *See* 8 U.S.C. § 1229c. The IJ set Singh's voluntary departure date as November 1, 1999, and informed him that failure to comply would render him ineligible for various forms of relief, including adjustment of status, for ten years from that date.

Singh violated the order and remained in the United States. In March 2001 he married a lawful permanent resident, who filed a visa application on Singh's behalf and who later became a naturalized United States citizen. In September 2001, Singh filed a motion to reopen in order to reapply for asylum and withholding of removal, as well as to seek an adjustment of status based on his marriage. The IJ denied Singh's motion in November 2001. In April 2003, Singh filed a second motion to reopen, which the IJ granted, noting (incorrectly) that the Department of Homeland Security ("DHS") had not opposed the motion. Having reopened the case, the IJ transferred venue to Hartford, Connecticut. After a hearing on Singh's re-

opened case, IJ D'Angelo in Hartford found that, despite the reopening of his case, Singh was statutorily ineligible, under 8 U.S.C. § 1229c(d), for an adjustment of status because he had failed to voluntarily depart. The IJ also stated that even if Singh were eligible for an adjustment of status, he would, in his discretion, deny the relief because Singh had deliberately disregarded his voluntary departure date. Based on the § 1229c(d) bar, the IJ pretermitted Singh's application for adjustment of status.

The BIA adopted and affirmed IJ D'Angelo's decision. It specifically agreed with the IJ's conclusion that § 1229c(d) posed a statutory bar to Singh's application for adjustment of status, which the granting of the motion to reopen did not remove. The BIA's decision does not mention the IJ's further statement regarding a discretionary basis for denying Singh relief.

## DISCUSSION

Where, as here, the BIA has adopted and affirmed the IJ's decision "and, without rejecting any of the IJ's grounds for decision, emphasizes particular aspects of that decision, we will review both the BIA's and IJ's opinions." *Yun–Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005); *see also Bugayong v. INS*, 442 F.3d 67, 70 (2d Cir.2006) (per curiam).

The government contends that we lack jurisdiction to review Singh's petition because the IJ made a discretionary judgment that even if Singh were eligible for adjustment of status, he should be denied such relief due to his conduct. *See* 8 U.S.C. § 1252(a)(2)(B)(i); *Bugayong*, 442 F.3d at 71 (holding that denial of an INA § 245 adjustment of status application qualifies as a discretionary judgment for purposes of the jurisdiction-stripping provision of 8 U.S.C. § 1252). Although Congress barred judicial review of a decision

to grant discretionary relief such as § 245 adjustment of status, it partially restored jurisdiction by not "precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(d). We have held that, for purposes of this jurisdiction-restoring provision, " 'questions of law' cannot be construed in the broadest possible light," but instead "refers to 'a narrow category of issues regarding statutory construction.' " *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 153 (2d Cir.2006) (citation omitted).

We recently described adjustment of status under § 245 as "a two-step process," involving, first, proof of an alien's statutory eligibility for the adjustment, and second, an exercise of discretion by the Attorney General as to whether to grant such relief. *Rodriguez v. Gonzales*, 451 F.3d 60, 62 (2d Cir.2006). "Because these two stages are distinct, we have jurisdiction to review whether the BIA correctly determined that the alien was *eligible* for . . . adjustment of status." *Id.* (citation omitted). "[W]here the ground for denial of relief is either unclear or based on a nondiscretionary ground [the] jurisdiction stripping provision does not apply." *Id.* (citing *Mariuta v. Gonzales*, 411 F.3d 361, 367 (2d Cir.2005)).

Here, the IJ found Singh ineligible for adjustment of status due to the statutory bar, and, as a result, pretermitted the application and never reached the second stage of the analysis described in *Rodriguez*.[2] Moreover, the sole basis for the IJ's "discretionary" ruling appears to have been the same as the basis for his ruling on Singh's eligibility for adjustment of status—namely, that Singh failed to comply with the voluntary departure deadline. Thus, before reaching the question of whether we lack jurisdiction to review the IJ's alternative basis for denying Singh relief, we will first consider the issue of Singh's statutory eligibility for an adjustment of status. *Cf. Mariuta v. Gonzales*, 411 F.3d 361, 365 (2d Cir.2005) (holding that the Court lacked jurisdiction to review a BIA decision denying an adjustment of status where such decision was clearly discretionary because it did not rely on any of the statutory prerequisites to obtaining an adjustment and acknowledged that the petitioner *did* appear eligible for such relief). This issue is one of statutory construction involving 8 U.S.C. § 1229c, and thus is properly before us for review. *See Rodriguez*, 451 F.3d at 62. Accordingly, we review the BIA's conclusion that, notwithstanding the successful motion to reopen, § 1229c(d) bars Singh's application for adjustment of status because he failed to comply with the voluntary departure order.

In reviewing an agency's interpretation of the statute it administers, we first consider whether the statute clearly addresses a particular issue; if so, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. In cases involving the BIA's interpretation of an ambiguous provision of the INA, we afford "substantial deference"

---

**2.** The IJ stated only that he "would" deny Singh's application for an adjustment "were he eligible" for such relief.

to the BIA, "rejecting its interpretation only if it is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Evangelista v. Ashcroft,* 359 F.3d 145, 150 (2d Cir. 2004) (quoting *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778).

Section 1229c(d) provides, in part: "[I]f an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien … shall be ineligible for a period of 10 years, to receive any further relief under" various provisions of the INA, including § 245 adjustment of status. 8 U.S.C. § 1229c(d)(1). It is undisputed that Singh was permitted voluntary departure under § 1229c and that he failed to depart within the time period specified. The only question is whether granting Singh's motion to reopen his case had the effect of vacating his voluntary departure order, thereby exempting him from the penalties imposed by § 1229c(d).

Singh urges us to follow the Seventh Circuit's holding in *Orichitch v. Gonzales,* 421 F.3d 595 (7th Cir.2005), that the BIA's grant of a motion to reopen removes the § 1229c(d) bar on applications for adjustment of status "by disposing of the [voluntary departure] order that otherwise triggered the operative effect of that section." *Id.* at 598. *Orichitch* involved an unusual set of facts that are easily distinguishable from this case. Due to apparent inadvertence on the part of government officials, Orichitch filed a joint motion to reopen three days after her voluntary departure deadline. In contrast, Singh filed his first motion to reopen nearly two years after his departure deadline, with no explanation for the delay, and filed his second motion to reopen another year and a half later.[3] Whereas Oritchitch had applied for a visa before her voluntary departure date, Singh did not do so until almost one and a half years after that date had passed. To the extent that the Seventh Circuit's holding in *Orichitch* might be broad enough to encompass this vastly different factual scenario—and would require a finding that the IJ's granting of Singh's second motion to reopen eliminated the preclusive effect of § 1229c(d) on his application for adjustment of status—we decline Singh's invitation to adopt a similar holding here. *See Dacosta v. Gonzales,* 449 F.3d 45, 50–51 (1st Cir.2006) (holding that the BIA's reopening of a case "could not 'retroactively nullify' [the petitioner's] previous violation of the terms of [a voluntary departure] order." *Id.* at 50–51 (citation omitted)).

■ We hold that, for purposes of § 1229c(d), the granting of a motion to reopen does not undo the effect of a prior violation of a voluntary departure order.[4] Motions to reopen are designed to allow consideration of circumstances that have arisen subsequent to the applicant's previous hearing. *See* 8 C.F.R. § 1003.2(c)(1). The granting of a motion to reopen does not necessarily imply that the underlying application for relief will also be granted, only that it will be considered in light of whatever previously unavailable evidence

---

3. Because Singh's motion to reopen, though granted, was not filed until long after the voluntary departure period had expired, there is no issue as to whether or not the departure period was equitably tolled. *Cf. Zmijewska v. Gonzales,* 426 F.3d 99, 101–103 (2d Cir.2005) (remanding a case to the BIA to consider whether, under extraordinary circumstances, courts may equitably toll a voluntary depar-

ture period in order to grant relief from § 1229c(d)).

4. Because the BIA did not err in its interpretation of 8 U.S.C. § 1229c(d) as barring Singh's eligibility for adjustment of status, we need not reach the issue of whether this Court would have jurisdiction to review the IJ's alternative basis for denying such relief.

is presented. *See id.* In the present circumstances, where Singh was statutorily barred from the relief he was seeking, the granting of a motion to reopen may in some sense seem anomalous. Yet it does not follow that the statutory bar was nullified as a result. Were we to assume ambiguity in the application of 8 U.S.C. § 1229c(d) under these circumstances, we would nonetheless defer to the BIA's reasoned interpretation that the statutory bar remains in place.

Other reasons weigh in favor of our conclusion. We recently observed that "[v]oluntary departure under [8 U.S.C. § 1229c] benefits both the government and the alien who obtains it." *Thapa v. Gonzales,* 460 F.3d 323, 328 (2d Cir.2006). However, "for an alien, serious consequences result" from "compliance with a voluntary departure order," as well as from noncompliance. *Id.* One consequence of complying with a voluntary departure order is forfeiture of the right to file a motion to reopen, because the alien has already left the United States. *See* 8 C.F.R. § 1003.2(d); *see also Thapa,* 460 F.3d at 328 (describing other consequences of compliance, such as the logistical difficulty of filing a long-distance appeal). Singh's position that the granting of an untimely motion to reopen nullifies the consequences of his prior noncompliance— specifically, the statutory bar against obtaining a future adjustment of status— implies that he also may avoid the consequences of compliance—since he would not have been able to file a motion to reopen if he had voluntarily departed in the first place. Adopting Singh's approach would create perverse, but significant, incentives not to comply with voluntary departure orders.

## CONCLUSION

For the foregoing reasons, the petition for review is DENIED. Any previously granted motion for stay of removal is VACATED. Any pending motion for stay of removal is DENIED.