NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0829n.06
Filed: December 7, 2007

No. 06-4020

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| HASAN ABU FOUL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| MICHAEL B. MUKASEY, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: COLE and COOK, Circuit Judges; and MILLS, District Judge.*

COOK, Circuit Judge. Hasan Abu Foul, a native and citizen of Jordan, petitions for review of the Board of Immigration Appeals' (BIA) denial of his application for relief from removal. The BIA adopted and affirmed the Immigration Judge's (IJ) decision, which found Abu Foul removable because he entered the United States without being admitted or paroled, denied his adjustment of status because he could not show an immediately available immigrant visa, and denied his request for voluntary departure because he did not possess valid travel documents. For the following reasons, we deny Abu Foul's petition for review.

---

*The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

I.

Abu Foul is a citizen and native of Jordan who illegally entered the United States in January 1997. Shortly after his arrival, he married United States citizen Tiffany Turner, who filed a Form I-130 visa petition on his behalf—the first step toward obtaining permanent residency based on marriage to a citizen. *See* 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.2(a)(1). At the same time, Abu Foul filed a Form I-485 application to adjust status—the second step. *See* 8 U.S.C. § 1255(a). Abu Foul's situation, however, took three turns for the worse: (1) Turner divorced him in 1998; (2) she withdrew the pending I-130 the next year; and (3) in 2001, the INS denied his application for adjustment of status (given Turner's withdrawn I-130) and ordered him to appear on charges of being subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), which governs aliens who have entered the United States illegally.

By the time the INS sent its notice, however, Abu Foul had remarried, now to United States citizen Ilham Salah Hanieh. Hanieh filed her own I-130 visa petition on Abu Foul's behalf, which the INS approved in February 2002. When appearing before the IJ in his removal proceedings, Abu Foul conceded that he was subject to removal, but sought two alternative forms of discretionary relief: adjustment of status based on Hanieh's approved I-130 or voluntary departure to Jordan. *See* 8 U.S.C. § 1229c; 8 C.F.R. § 1240.26. When the government then revealed that it would be revoking Hanieh's I-130, the IJ granted a continuance.

The INS then sent Hanieh and her attorney, George Mann, a letter confirming its intent to revoke the I-130. The letter explained, "A review of Mr. Abu-Foul's immigration records reveal[ed] the existence of a letter dated July 13, 1998," which "conveyed Ms. Turner's conviction that Mr. Abu-Foul had entered into matrimony with her for the sole purpose of circumventing the immigration laws of the United States." Following up on this lead, the letter continued, agents interviewed Turner in person, where she stated that she "had been offered financial remuneration" to marry Abu Foul. Specifically, "she had been paid $2,000.00 and . . . offered a second installment of $5,000.00 that was to be paid after the administrative process had been successfully completed and lawful permanent residence status had been obtained for Mr. Abu-Foul." The letter surmised that Abu Foul had thus "sought to be accorded immediate relative status as the spouse of a citizen of the United States by reasons of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws," and was therefore not eligible for adjustment. *See* 8 U.S.C. §§ 1154(c), 1155. Hanieh had thirty days to rebut the allegation.

Hanieh's attorney mailed rebuttal evidence, including a copy of Turner's divorce complaint (which cited only a "breakdown in the marriage relationship"), and affidavits from friends who had visited the couple during their marriage.[1] Nevertheless, a month later the Department of Homeland

---

[1]FedEx receipts confirm March 3, 2003, as the date Mann sent the evidence and March 4, 2003, as the delivery date—*thirty-two* days after receipt of the INS letter. Nevertheless, pursuant to 8 C.F.R. § 103.5a(b), "[w]henever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period." No one disputes the responses' timeliness.

Security's Bureau of Citizenship and Immigration Services revoked Hanieh's I-130. In its

revocation, the DHS explained, rather curiously, that

> You were allotted thirty days in which to respond to the Notice of Intent. No response has yet been received. As such, any action designed to alter the original adjudication decision of this petition must be predicated on the information, evidence and documents already housed within the beneficiary's immigration file.
>
> The purpose of this correspondence, then, is to notify you that it is the decision of the Service to revoke the approval of the Petition for an Alien Relative, Form I-130 that you filed on behalf of Hasan Abu Foul. Any attendant rights or privileges associated with the approval of this petition are also hereby terminated.

Mann re-sent the rebuttal evidence, but received no response from the DHS.

At Abu Foul's reconvened removal hearing, the government asked the IJ to pretermit Abu

Foul's I-485 application as there was no longer an approved I-130 to support a status adjustment, and

Abu Foul objected on several grounds. Represented by new counsel, he focused on arguing that the

government had improperly served the revocation by not sending it to Hanieh's last known address

(the couple had moved), thus rendering it invalid. *See* 8 C.F.R. § 205.2(b)–(c). Abu Foul also

implicitly attacked the revocation on its merits. After thoroughly examining the evidence, the IJ

noted that, in light of Mann having sent rebuttal evidence, "it does appear highly unlikely that

[Hanieh] was not aware of the . . . intent to revoke." The IJ continued:

> The evidence before the Court supports a finding that the Government notified [Hanieh] of the notice of intent to revoke and the revocation itself at an address that it had for [Hanieh] as a last known address and there is no evidence that, for [Hanieh] at least, there was any change of address.

> Whether the revocation was appropriate on its merits, . . . this is not something that I had jurisdiction over. There was an appeals process, now whether [Hanieh] can do a motion to the Government . . . so that the matter can be reopened and a reconsideration or, ultimately an appeal can be considered, is something for [Hanieh] to take up with the Department of Justice. It is not for this Court to review whether or not the revocation was appropriate.

> This Court has jurisdiction only over the application for adjustment of status. I had proper evidence of the revocation. I had proper evidence that notice was sent of the revocation to [Hanieh] at what the Government properly believed was the last known address of [Hanieh]. Based on that, the application for adjustment of status is therefore denied. [Abu Foul] would also be eligible for voluntary departure under [8 U.S.C. § 1229c(a)(1)], but he is not qualified at this point in time, in that he is not able to present in Court today a valid passport or other travel documentation.

The IJ then ordered Abu Foul removed to Jordan based on the 8 U.S.C. § 1182(a)(6)(A)(i) charge.

On appeal to the BIA, Abu Foul reasserted the arguments raised before the IJ, while adding that the regulation permitting revocation of an approved visa petition "at any time" is "vague and unclear," "prima facie unconstitutional," and does "not afford an alien with Due Process." The BIA summarily adopted and affirmed the IJ's decision in a per curiam order and dismissed the appeal. It noted, "given that the attorney for the respondent and his petitioner-wife timely responded to the intent to revoke the approval of the visa petition at issue, we find sufficient evidence of notice and no good cause to grant a continuance." The BIA added that it lacked authority to address Abu Foul's constitutional claims. *See Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations.").

II.

We have jurisdiction to review the Board's decision as dictated by 8 U.S.C. § 1252(a). Where the BIA adopts the IJ's decision and supplements that decision with its own comments, we review both the BIA's and the IJ's opinions. *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (per curiam). We review administrative findings of fact, including credibility determinations, for substantial evidence, *Tapucu v. Gonzales*, 399 F.3d 736, 738 (6th Cir. 2005), and thus consider them "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

Abu Foul raises several arguments in support of his petition, including that (1) the IJ and BIA failed to consider "whether the Service abused its discretion in revoking the I-130," (2) the IJ and BIA "failed to review or consider whether the Service followed the proper procedures for the revocation of an approved I-130," and (3) the regulation permitting visa revocation "is too broad, ambiguous and vague with respect to time limitations and is being employed in this case to defeat a benefit the Petitioner is fully entitled to receive." We discuss each in turn.

A. Abuse of discretion

Upon a finding of removability, aliens may apply for discretionary relief. Here, Abu Foul sought adjustment of status and voluntary departure. Adjustment of status under 8 U.S.C. § 1255 is a two-step process. First, the alien must prove statutory eligibility for the adjustment, and second,

the Attorney General—or, in the context of deportation proceedings, the IJ—must exercise its discretion to grant relief. *Singh v. Gonzales*, 468 F.3d 135, 138 (2d Cir. 2006); *Rodriguez v. Gonzales*, 451 F.3d 60, 62 (2d Cir. 2006). Abu Foul bore the burden at both steps, first to establish eligibility and then to establish that he merited a favorable exercise of agency discretion. *Matovski v. Gonzales*, 492 F.3d 722, 739 (6th Cir. 2007). While we can review the threshold issue of whether an alien is statutorily eligible for adjustment of status, we cannot review the discretionary decision of whether to grant adjustment. 8 U.S.C. § 1252(a)(2)(B), (D).

Without reaching the question of whether Abu Foul merited a discretionary grant of relief, the IJ found Abu Foul statutorily ineligible for adjustment of status because he did not have an approved visa petition as required by § 1255(a). The IJ also determined that Abu Foul was barred from benefiting from a future I-130 petition because § 1154(c) denies aliens immediate relative visas when "the Attorney General has determined that the alien . . . attempted or conspired" to marry an American citizen for the purpose of obtaining residence.

We find no error in the IJ's conclusion that Abu Foul failed to establish statutory eligibility for relief. Under § 1255(a) an alien may be eligible for adjustment of status if, among other prerequisites, an immigrant visa is immediately available. An approved I-130 results in a visa becoming immediately available because the alien spouse is not subject to the numerical limits set forth in 8 U.S.C. § 1151(a). But because the DHS revoked the approved I-130, Abu Foul no longer had an immediately available visa, nor was he eligible for one in the future. *Id.* § 1255(a); *see also*

8 C.F.R. § 204.2(a)(1)(ii) (stating that a visa petition shall not be approved if the alien has "attempted . . . to enter into a marriage for the purpose of evading the immigration laws").

Abu Foul resists this conclusion by arguing that the DHS erroneously revoked the I-130, but it seems clear that the IJ properly confined his review to determining whether Abu Foul was statutorily eligible for a status adjustment. An IJ decides an adjustment of status application in removal proceedings, 8 C.F.R. § 1245.2(a)(1), but does *not* adjudicate the underlying I-130 visa petition submitted on an immigrant's behalf, as that decision rests with the DHS, *see id.* § 204.1(e); *see also Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002); *Hassan v. INS*, 110 F.3d 490, 494 (7th Cir. 1997); *Matter of Aurelio*, 19 I. & N. Dec. 458, 460 (BIA 1987). When the DHS takes an adverse action, "[t]he petitioner or self-petitioner may appeal the decision to revoke the approval within 15 days after the service of notice of the revocation." 8 C.F.R. § 205.2(d); *see also id.* § 103.3(a)(iii)(B) (the petitioner must file the appeal, not the beneficiary); *id.* § 1003.3(a)(2); *Matter of Sano*, 19 I. & N. Dec. 299, 300 (BIA 1985) ("[O]nly the petitioner can appeal from the revocation of a previously approved visa petition."). When Hanieh failed to appeal from the revocation of her I-130 submitted on Abu Foul's behalf, Abu Foul became ineligible for a status adjustment because he did not have an approved petition certifying that he was married to a United States citizen. In short, he did not carry his burden of establishing statutory eligibility.

B.  Notice of revocation

The IJ did properly consider whether the DHS satisfied its obligation to provide Hanieh, as the petitioning spouse, with notice of its intent to revoke the I-130 and an opportunity to present evidence in opposition.[2]  *See* 8 C.F.R. § 205.2(b)–(c).  Although Abu Foul argues that the DHS did not follow these procedures, substantial evidence supports the IJ's finding that the DHS notified Hanieh, and we therefore uphold the revocation as valid.

First, Hanieh admitted at Abu Foul's removal hearing that (1) the DHS sent the revocation to the address she had provided when she filed the I-130 in 2001, (2) she lived with Abu Foul at that address in February 2002 when the DHS interviewed the couple regarding the I-130, and (3) she did not notify the government of the changed address when she moved in April 2002.  Hanieh attempted to explain her failure to notify the government by claiming that she told Mann, her attorney, thinking he would notify the DHS.  But the IJ did not find Hanieh's explanation credible based on her inconsistent testimony.  For example, she denied receiving mailed notice of the approved I-130, despite the INS approving it when Hanieh lived at the same address she initially provided.  At one point, she said she hired Mann in 2001 but later changed the year to 2002.  And she oscillated

---

[2]As part of his efforts, Abu Foul quotes the 2000 version of 8 U.S.C. § 1155 for the proposition that no "revocation [shall] have effect unless there is mailed to the petitioner's last known address a notice of the revocation."  In 2004, however, Congress deleted the mandatory notice requirement.  *See Ghanem v. Upchurch*, 481 F.3d 222, 224 (5th Cir. 2007); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 203 (3d Cir. 2006).  Despite the amendment, as the government concedes, the C.F.R. still establishes revocation procedures.  *See Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004) (explaining the "elemental principal of administrative law that agencies are bound to follow their own regulations").

between four addresses and could not recall if and when she notified authorities of the moves. As the IJ concluded, "because of the inability to recall exact dates regarding her change of addresses, and what she did at the time of the change of address, and when she retained Mr. Mann, and when she notified Mr. Mann of the change of address, it seems inappropriate to find that the revocation was invalid based on this type of recollection."

Second, as the BIA recognized, Mann "timely responded to the intent to revoke the approval of the visa petition at issue," and the IJ opined that Mann likely consulted with Abu Foul to find the witnesses whose affidavits he submitted. Under these circumstances the evidence fails to *compel* the conclusion that notice was absent, as is necessary.[3] *Tapucu*, 399 F.3d at 738; *see also Ablahad v. Gonzales*, 217 F. App'x 470, 474 (6th Cir. 2007) (in the context of a motion to reopen, the "bald assertion" of not receiving notice "alone cannot support a finding that the BIA abused its discretion in affirming the IJ's denial of the motion to reopen"). With this revocation valid, the IJ and BIA did not err in finding Abu Foul ineligible for adjustment. *See* 8 U.S.C. § 1255(a)(3).

---

[3]Although the argument is undeveloped, to the extent Abu Foul charges the IJ with an abuse of discretion "in not granting a continuance for the purpose of clarifying the record with the Service or allowing counsel time to reopen [Hanieh's] case before the Service based on its error in failing to consider [Hanieh's] rebuttal evidence," we agree with the government that the IJ "was under no obligation to solicit requests for a continuance, or to grant one *sua sponte*, particularly in light of the fact that the merits hearing on Abu Foul's application for adjustment of status was held almost *two years* after the DHS rescinded its approval of the I-130 petition."

C.  Revocation procedure

Finally, Abu Foul challenges the constitutionality of the regulation permitting the DHS to revoke an I-130, citing two related points:  (1) the regulation allows the DHS to revoke a petition at any time, and (2) great harm befalls an alien when the DHS revokes a petition based on marriage fraud.

It is true that 8 U.S.C. § 1155 allows the Secretary of Homeland Security, and the DHS pursuant to 8 C.F.R. § 205.2(a), to revoke an approved petition "at any time."  It is also true that 8 U.S.C. § 1154(a) bars an alien found to have entered a sham marriage from receiving a future immigration benefit.  We reject Abu Foul's argument, however, because "[a]n alien does not obtain a vested right upon approval of a visa petition." *Wright v. INS*, 379 F.2d 275, 276 (6th Cir. 1967); *see also Bangura v. Hansen*, 434 F.3d 487, 496 n.2 (6th Cir. 2006).  Rather, "approval of that petition merely renders the alien spouse eligible for immigrant status." *Pacheco Pereira v. INS*, 342 F.2d 422, 423 (1st Cir. 1965); *see also Bilali v. Gonzales*, No. 06-4050, 2007 WL 2701081, at *1 (6th Cir. Sept. 18, 2007) (per curiam) ("The determination that an alien spouse qualifies as an immediate relative under the statute is only the first step in a longer process that was enacted specifically to address concerns about marriage fraud.").  The alien must then merit a favorable exercise of the agency's discretionary power to grant relief.  In Abu Foul's case, where he conceded removability, where his status was not adjusted, and where Hanieh's I-130 was revoked little more than a year after being approved, the revocation, and the statute authorizing it, did not offend his due

process rights. He had no protected interest in obtaining discretionary relief from removal. *See*

*Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001) ("The failure to be granted discretionary

relief does not amount to a deprivation of a liberty interest.").

As Abu Foul does not challenge the IJ's denial of voluntary departure, we do not consider

it. *See Patel v. Gonzales*, 470 F.3d 216, 219 (6th Cir. 2006) (failure to challenge IJ's decision

denying asylum constitutes forfeiture).

III.

For these reasons, we deny the petition for review.